**Jack KULCHIN, Plaintiff,**

v.

**SPEAR BOX COMPANY, INC. RETIRE- MENT PLAN, Spear Sales Company, Inc. Retirement Plan, and Sidney Conescu, Individually and as Trustee of the Spear Box Company, Inc. Retirement Plan and the Spear Sales Company, Inc., Retirement Plan, Defendants.**

**No. 78 Civ. 592 (RLC).**

United States District Court, S. D. New York.

May 19, 1978.

Shereff, Friedman, Hoffman & Goodman, New York City, for plaintiff.

Zelby, Burstein, Bernstein & Hartman, New York City, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, Jack Kulchin, commenced this action against the employee retirement

plans ("Plans") of Spear Box Company ("Spear Box") and Spear Sales Company ("Spear Sales"), and against Sidney Conescu, individually and in his capacity as the trustee of the defendant Plans. Kulchin seeks to recover pension benefits allegedly owed to him under the Plans,[1] certain statutorily prescribed penalties arising from defendant Conescu's alleged refusal to supply Kulchin with specific documents relating to the Plans,[2] and attorneys' fees.[3]

Defendants now move for summary judgment pursuant to Rule 56, F.R.Civ.P.[4] Plaintiff, in his responsive papers, resists defendants' motion and asks that summary judgment be entered in his favor since the court clearly has the power, in appropriate circumstances, to grant summary judgment for the non-moving party even in the absence of a formal cross-motion for such relief.[5] For the reasons set out below, defendants' motion is denied, and partial summary judgment will be entered for plaintiff solely on his claim for pension benefits under the Plans.

*Facts*

Plaintiff is a seventy-five year old man who, for fifty-five of those years, has been a director, officer, employee and/or shareholder of both Spear Box and Spear Sales ("Companies"). In 1963, the Companies first created the Plans and from their in-

ception, plaintiff here has been a "participant" in the Plans, i. e., he has been included within them, and, under certain circumstances, would be entitled to pension benefits under them.

On August 29, 1977, the relationship between the plaintiff and the Companies ended. Plaintiff claims that he was discharged and locked out of his offices. The Companies contend that Kulchin voluntarily left their employ. Whichever version of the facts surrounding Kulchin's departure from the Companies is accepted, it is undisputed that after August 29, 1977, plaintiff provided no services to the Companies, nor did he receive any compensation from them.[6]

On September 2, 1977, Kulchin phoned Conescu and requested that his pension benefits be distributed to him. Plaintiff maintains that he specifically demanded that he be sent the claim forms that are technically required by the Plans before any pension benefits are paid out;[7] defendants disagree. In any event, no such claim forms were provided to Kulchin.

Two weeks later, on September 14, 1977, Kulchin commenced an action in New York State Supreme Court[8] against the Companies challenging the propriety of his discharge and seeking reinstatement and back pay. That suit is now pending, and it is the effect of that suit on plaintiff's entitlement

---

1. *See* 29 U.S.C. § 1132(a)(1)(B) (Supp.IV 1974).

2. *See* 29 U.S.C. § 1132(c) (Supp.IV 1974).

3. *See* 29 U.S.C. § 1132(g) (Supp.IV 1974).

4. Defendants' motion was, in fact, termed a motion to dismiss and made pursuant to Rule 12(b), F.R.Civ.P. However, since the motion papers refer to matters outside the pleadings, both the court and the parties have treated the motion as one for summary judgment pursuant to Rule 56, F.R.Civ.P. *See Gordon v. New York Stock Exchange, Inc.,* 498 F.2d 1303, 1305 n.6 (2d Cir. 1974), *aff'd,* 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975); F.R.Civ.P. 12(b).

5. *Morrissey v. Curran,* 423 F.2d 393, 399 (2d Cir.), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970); *Harcourt, Brace & World, Inc. v. Graphic Controls Corp.,* 329 F.Supp. 517 (S.D.N.Y.1971) (Lasker, J.); 6 Moore's Federal Practice ⸗ 56.12 (1976).

6. *See* Plaintiff's Affidavit in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiff's Prayer for Relief (March 14, 1978), Exhibit (a) ⸗ 16; Exhibit (b) ¶ 11; Exhibit (c). *Compare* plaintiff's Statement of material facts not in issue, S.D.N.Y.Gen. R. 9(g), *with* defendant's Statement of material facts in issue, S.D.N.Y.Gen. R. 9(g). *See also* Affirmation of Herbert Burstein in Support of Defendants' Motion to Dismiss and in Opposition to Plaintiff's Prayer for Relief, ¶¶ 5, 6 (March 20, 1978).

7. Section 12.9 of both Plans provides: "Claims for benefits under the Plan shall be filed, on forms supplied by the Committee." Plaintiff's Affidavit in Opposition, *supra* n.6, Exhibit (f) § 12.9; Exhibit (g) § 12.9.

8. *Kulchin v. Spear Box, Inc.,* No. 220022/77 (Sup.Ct., filed Sept. 14, 1977).

to his benefits under the Plans which is at the core of the instant motion.

Kulchin pressed forward in his state court action and on November 29, 1977, demanded in the course of pretrial discovery that the Companies supply him with copies of the trustees' annual report for both Plans for the fiscal year ending August 31, 1977. Those documents were not given to plaintiff until almost four months after the discovery request was first made, and then, only pursuant to state court order.

The instant suit was commenced on February 10, 1978. Plaintiff here seeks to enforce his right to pension benefits under the Plans and to *recover a $100 per day statutory penalty from defendant Conescu for his failure to provide Kulchin with the pension claim forms and for his refusal to turn over copies of the Plans' annual reports.*

On March 6, 1978, plaintiff made a specific formal written request to Conescu for the benefit claim forms alluded to in both Plans. It turned out, however, that no such forms existed. Instead, on March 20, 1978, defendants delivered to plaintiff's counsel a newly composed form which purported to embody those questions which the Plans traditionally asked of claimants.

In March and April of this year, the parties filed the papers which are now before the court. Oral argument was held on April 28, 1978, and now the matter is ripe for a determination at least in part.

## 1. Right to Pension Benefits

In order for plaintiff to be entitled to receive benefits under the Plans, he either must have retired[9] or his employment must have been "terminated otherwise than by death, retirement or disability."[10] If plaintiff meets either of those prerequisites, the terms of the Plans require that payments "must commence not later than sixty (60) days after the Valuation Date, or, if later, not later than the sixtieth (60th) day following the date upon which the amount payable is ascertained."[11] This section is mandated by § 206(a) of the Employee Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1056(a), which states in pertinent part that:

"[e]ach pension plan shall provide that unless the participant otherwise elects, the payment of benefits under the plan to the participant shall begin not later than the 60th day after the latest of the close of the plan year in which—

(1) the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan,

(2) occurs the 10th anniversary of the year in which the participant commenced participation in the plan, or

(3) *the participant terminates his service with the employer.*"

*Ibid.* (emphasis added). The valuation date and the close of the plan year for the defendant Plans were on August 31, 1977. Thus, if plaintiff retired or was terminated prior to August 31, 1977, he was entitled by statute and by the terms of the Plans to

---

**9.** *See* Plaintiff's Affidavit in Opposition, *supra* n. 6, Exhibit (f) § 7; Exhibit (g) § 7.

**10.** *See id.,* Exhibit (f) § 10; Exhibit (g) § 10. Where an employee has been "terminated otherwise than by death, retirement or disability," he is entitled only to that percentage of benefits which has "vested" as of the "valuation date" which coincides with or succeeds the date of his termination. *Ibid.* The "valuation date" is defined as the last day of the taxable year of the Trust Fund, which is the last day of the fiscal year adopted by the Companies. *See id.,* Exhibit (f) § 1; Exhibit (g) § 1. The valuation date for the Plans is August 31 of each year. Affidavit of Robert Conescu ¶ 4 (March 7, 1978).

In the present case, it is clear that plaintiff has participated in the Plans for well over ten years, the time period after which an employee's rights are fully vested. *See* Plaintiff's Affidavit in Opposition, *supra* n. 6, Exhibit (f) § 10; Exhibit (g) § 10. Therefore, if plaintiff retired or his employment was terminated, he is entitled to *full* benefits under the Plans.

**11.** Plaintiff's Affidavit in Opposition, *supra* n. 6, Exhibit (f) § 7.3; Exhibit (g) § 7.3 (retirement sections). This provision is incorporated by reference into the sections dealing with termination other than by retirement, death or disability. *See id.,* Exhibit (f) § 10.1; Exhibit (g) § 10.1.

receive his pension benefits within 60 days of that August 31 date.

### A. Contentions of the Parties

Plaintiff argues that his employment was terminated with the Companies on August 29, 1977, and that this fact is manifest whether one accepts his contention that he was discharged, or defendants' claim that he voluntarily retired. Since the close of the plan year and the relevant valuation date for both Plans was August 31, 1977, plaintiff contends that under the terms of the Plans and ERISA, he was entitled to his pension benefits as of November 30, 1977. Because that date is long past, and because there are no material facts at issue as to plaintiff's right to his pension benefits, plaintiff asks that summary judgment be entered in his favor as to his right to collect his benefits under the Plans.

Defendants concede that if plaintiff had retired voluntarily, or had been discharged involuntarily and had "accepted" that discharge, he now would be entitled to his benefits under the Plans.[12] Defendants argue, however, that as long as Kulchin does not "accept" the termination of his employment, i. e., continues to prosecute his state suit for back pay and reinstatement, his claim to pension benefits is premature. Defendants' argument is threefold.[13] First, they contend that because plaintiff is seeking both reinstatement and back pay in his state court action, he still considers himself to be an active employee of the Companies and, thus, has neither terminated his employment nor retired within the meaning of the Plans or ERISA. Therefore, defendants argue that presently Kulchin does not fall within that category of persons entitled to benefits under the Plans.

Defendants' second argument is based on that provision of the Plans which states that payments must commence within "60 days after the valuation date, or, *if later, not later than the 60th day following the date upon which the amount payable is ascertained.*"[14] They contend that until Kulchin's state suit is completed, it is unclear whether the Companies will be required to make additional contributions to Kulchin's retirement account for that period of time, if any, for which he is awarded back pay in the state court action. Since the amount to be distributed to Kulchin cannot be ascertained conclusively until there is some final disposition in Kulchin's state suit, defendants argue that they are not bound to make any distribution to Kulchin until that suit is concluded.

Defendants' final argument is that if plaintiff is awarded his benefits and then later recovers his back pay in the state court action, he will be unjustly enriched at the expense of the defendant Plans because he will have received both his benefits and his salary for the same time period; and while he may be entitled to one or the other, he clearly is not entitled to both. Therefore, defendants argue that they should not be required to pay out benefits to Kulchin until the state suit is concluded. For all these reasons, defendants ask that summary judgment be entered in their favor on the grounds that plaintiff's suit is premature.

### B. Discussion

■ "In enacting ERISA, Congress was concerned about the dramatic growth of employee benefit plans in recent years and the importance they have assumed to millions of workers." *Cate v. Blue Cross &*

---

12. Affirmation of Herbert Burstein in Support of Defendants' Motion to Dismiss and in Opposition to Plaintiff's Prayer for Relief, *supra* n.6, ¶¶ 5, 6.

13. Initially defendants also made the argument that plaintiff was not entitled to recover his benefits because he had not made a proper application for benefits pursuant to § 12.9 of the Plans which requires that "[c]laims for benefits under the Plan shall be filed, on forms

supplied by the Committee." Defendants abandoned this contention at oral argument, however. We think it wise that they did so under the circumstances of the instant case where no such formal forms were even in existence.

14. Plaintiff's Affidavit in Opposition, *supra* n.6, Exhibit (f) § 7.3 (emphasis added); Exhibit (g) § 7.3 (emphasis added).

*Blue Shield,* 434 F.Supp. 1187, 1189–90 (E.D.Tenn.1977). "Prior to the enactment of [ERISA], aggrieved employees were often left without a remedy in seeking to recover benefits allegedly due them under a pension plan . . . or to correct breaches of duty by fiduciaries in their management of Pension funds." *Martin v. Bankers Trust Co.,* 417 F.Supp. 923, 924 (W.D.Va.1976), *aff'd,* 565 F.2d 1276 (4th Cir. 1977). ERISA was aimed at filling this "major gap in federal labor laws." *Ibid.* "It represents Congress's [sic] . . . strong statement of its desire to give pension plan participants maximum protection" of their rights under employee pension benefit plans. *Lewis v. Merrill Lynch, Pierce, Fenner & Smith,* 431 F.Supp. 271, 274 (E.D. Pa.1977).

ERISA contains its own statement of underlying policy which provides:

"It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

29 U.S.C. § 1001(b).

Evidencing this congressional concern that employee pension rights be protected, and of particular interest here, are those provisions of ERISA which seek to insure that pension benefits are paid promptly[15] and seek to provide those aggrieved under their plans with what was hoped to be a swift remedy in the federal courts.[16] Defendants' proposed construction of the word

"termination" in § 206(a) of ERISA, 29 U.S.C. § 1056(a), and in the Plans themselves as termination plus acceptance contravenes the intent of these specific provisions of ERISA as well as the more general purpose underlying the entire Act. Under defendants' construction of the word termination, an employer who unlawfully terminated his employee could avoid these statutory strictures for so long as his employee challenged the propriety of his employer's conduct. Moreover, the employer could use the employee's pension benefits as a bludgeon with which to subdue any challenge to the legality of the employer's actions. Thus, for example, if an individual's employment were terminated because he was forced to retire by his employer and the employee sought to challenge that termination on the grounds that it violated the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34,[17] he could be forced by his employer to forego any claim to his pension benefits for so long as he continued to press that challenge. Thus, for the duration of any court battle, the employee would have neither salary nor pension benefits upon which to rely for sustenance. In enacting ERISA, Congress did not intend to countenance such abuses; rather, it meant to eradicate them. Consequently, we conclude that in order to qualify for pension benefits plaintiff need not be terminated *and* "accept" that termination; he need only be terminated.

Defendants' argument that they are not bound to pay out any benefits to Kulchin until the state court action is concluded because only then will the precise sum of benefits owing to plaintiff be determinable must also fail. The provision relied upon by plaintiff to support its contention is found nowhere in the statute; it is found only in the Plans themselves.[18] The statute provides no such leeway for the commence-

---

**15.** 29 U.S.C. § 1056 (Supp. IV 1974).

**16.** 29 U.S.C. § 1132(a) (Supp. IV 1974).

**17.** *See, e. g., United Air Lines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977); *Zinger v. Blanchette,* 549 F.2d 901 (3rd Cir. 1977), *cert. denied,* 434 U.S. 1008, 98 S.Ct.

717, 54 L.Ed.2d 750 (1978); *Brennan v. Taft Broadcasting Co.,* 500 F.2d 212 (5th Cir. 1974). *See generally* Note, *Age Discrimination in Employment,* 50 N.Y.U.L.Rev. 924 (1975).

**18.** *See* Plaintiff's Affidavit in Opposition, *supra* n.6, Exhibit (f) § 7.3; Exhibit (g) § 7.3.

ment of benefit distributions. Rather, it specifically states that payments must begin within 60 days of the close of the plan year.[19] To allow this clause in the Plans to delay indefinitely the distribution of an employee's benefits would violate the specific terms of the statute. Moreover, acceptance of defendants' position would permit the same abuses which caused the court to reject defendants' earlier contention with respect to the meaning of the word "termination," i. e., employers would be able to withhold benefits from their former employees for so long as an employee challenged the legality of his discharge. Such a perversion of the statutory purpose cannot be tolerated. Rather, defendants must distribute to Kulchin that which he was entitled to receive when his employment terminated on August 29, 1977. Should any additional moneys accrue to his pension account as a result of his suit in the state courts, Kulchin may institute a new action to recover those additional funds at that future time.

■ Defendants do voice, however, a legitimate concern when they argue that the Plans may be damaged if they are forced to pay out pension benefits to Kulchin now, and then it turns out that he succeeds in his state court action. Kulchin would then be unjustly enriched at the expense of the Plans because he would receive both pension benefits and his salary for the same period of time. This difficulty, however, can be dealt with in a manner much less intrusive upon plaintiff's rights than simply denying him his benefits until the state court suit is concluded. Defendant Plans may intervene in the state court action and assert a claim against Kulchin for any salary he recovers up to the amount which is paid out to him in benefits. See N.Y.C.P. L.R. §§ 1012, 1013 (McKinney 1976). In

that way, the interest of both the plaintiff and the defendant Plans are fully protected.

■ Having concluded that plaintiff has either retired, or has had his employment terminated other than by death, disability or retirement, and that the 60 day period from the close of the plan year has long since passed, it is clear that plaintiff is entitled to his benefits under the Plans, and summary judgment should be entered in his favor on this claim. See generally Donnelly v. Guion, 467 F.2d 290 (2d Cir. 1972); F.R. Civ.P. 56. The only question remaining is whether he should receive his benefits in accordance with the procedures outlined in § 7 of the Plans (termination by retirement) or § 10 of the Plans (termination other than by retirement, death or disability). The distribution procedures of § 7 are more favorable to the participant,[20] but since it is plaintiff's position that he was wrongfully discharged, he is not entitled to the benefit of these more favorable provisions in the present posture of this case.[21] On the other hand, defendants can claim no prejudice in distributing benefits to plaintiff pursuant to § 10, since the procedure under that section is more restrictive than that which they would be required to follow if they established their claim that Kulchin had retired voluntarily. Accordingly, upon submission of an appropriate order, judgment will be entered for plaintiff on his claim for benefits under the Plans, to be paid in accordance with the procedures outlined in § 10 of the Plans.

2. *Statutory Penalties & Attorneys' Fees*

■ Section 502(c) of ERISA, 29 U.S.C. § 1132(c), empowers a district judge, in his discretion, to impose a fine of up to $100 per day on "[a]ny administrator who fails or

---

**19.** 29 U.S.C. § 1056(a) (Supp. IV 1974).

**20.** The distribution provisions for the two sections differ principally in that under § 7 it is the employee who maintains the discretion to obtain his benefits in one lump-sum payment, rather than installment payments over a ten-year period. Under § 10, that discretion is lodged with the trustee of the Plans.

**21.** Of course, if plaintiff were willing to stipulate that he voluntarily retired, he would be entitled to the more beneficial distribution provisions of § 7. Such a stipulation, however, might have collateral estoppel ramifications for plaintiff's action· pending in the state courts.

refuses to comply with a request for any information which such administrator is required . . . to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to . . . the requesting participant or beneficiary within 30 days after such request . . .." Subsection (g) of § 502 also empowers the district judge, in his discretion, to impose costs and reasonable attorneys' fees on either party. 29 U.S.C. § 1132(g). Plaintiff contends that he is entitled to recover both statutory penalties and attorneys' fees.

Plaintiff claims that he made a demand for pension claim forms on September 2, 1977, which he reiterated on March 6, 1978, but which he did not receive until March 20, 1978. He seeks to recover a $100 per day penalty for the period stretching from September 2, 1977, to March 20, 1978. In addition, plaintiff alleges that he made a request for the latest annual report of the Plans on November 29, 1977, a document to which he was entitled under ERISA,[22] but which he did not receive until March 13, 1978. Here again, plaintiff seeks to recover the $100 per day penalty for the period running from November 29, 1977, to March 13, 1978. Finally, plaintiff seeks to recover his attorneys' fees since he claims that defendants have acted in a dilatory and evasive manner and forced plaintiff to bring this action for no other reason than to inconvenience and harass the plaintiff. Plaintiff contends that there are no material facts in dispute and summary judgment should be entered in his favor.

Defendants claim that no request for claim forms was presented to them until March 6, 1978; and that they then complied with the request well within the required thirty-day statutory period. With respect to the annual report, defendants claim the report requested was for the fiscal year ending August 31, 1977, and that the requested report was not even due to be filed under the provisions of ERISA[23] until March 31, 1978. Defendants maintain that this was the reason that they did not turn over the annual report when requested to do so by plaintiff. Finally, with respect to the question of attorneys' fees, defendants claim that all their actions were taken in good faith out of a desire not to violate their fiduciary responsibilities under ERISA.

As is apparent from the mere statement of the contentions of the parties, the issues of statutory penalties and attorneys' fees raise many disputed and material issues of fact, and are, therefore, inappropriate for disposition on a motion for summary judgment. *See Schiess-Frioriep Corp. v. S.S. Finnsailor,* 574 F.2d 123, 126 (2 Cir. 1978); *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975). Thus, for example, the parties dispute when the request for claim forms was made; they dispute the basis for noncompliance with the request for the Plans' annual reports; and they dispute the basis for this suit in the first instance. Consequently, plaintiff's request for summary judgment on the question of statutory penalties and attorneys' fees is denied. That matter will be set down for hearing as soon as my calendar permits.

Defendants' motion for summary judgment is denied. Partial summary judgment is entered in favor of plaintiff on the issue of his right to benefits under the Plans. Settle order on notice.

---

**22.** 29 U.S.C § 1024(b) (Supp. IV 1974).

**23.** *See ibid.*