Ralph POMPANO, Plaintiff-Appellant,

v.

MICHAEL SCHIAVONE & SONS, INC. and Revised Pension Plan of Michael Schiavone & Sons, Inc., Defendants-Appellees.

No. 788, Docket 81–7841.

United States Court of Appeals, Second Circuit.

Argued March 29, 1982.

Decided June 4, 1982.

---

William H. Clendenen, Jr., New Haven, Conn. (Clendenen & Lesser, New Haven, Conn., on the brief), for plaintiff-appellant.

Shaun S. Sullivan, New Haven, Conn. (Patrick M. Noonan, Wiggin & Dana, New Haven, Conn., on the brief), for defendant-appellees.

Before KAUFMAN, MANSFIELD and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Appellee Michael Schiavone and Sons, Inc. ("Schiavone") had a pension plan for the benefit of its employees, one of whom was appellant Ralph Pompano. When Pompano reached retirement age (65) after 36 years as an employee of Schiavone, he sought a single lump sum payment which, under Article IV § 2 of the plan, was one of the optional modes of settlement a participant could elect "[i]n lieu of the normal pension to which he would otherwise be entitled." The plan provided that the lump sum option was available only with the "prior approval of the [Pension] Committee."

When the plan became effective in 1972, all of Schiavone's employees were given a pamphlet which explained its major provisions in simple terms. The pamphlet made clear that the lump sum option was available "only with the permission of the Committee." Pompano's request for a lump sum payment was considered by the Committee ("Committee") and denied. He retired December 31, 1975, was awarded and is presently receiving monthly pension payments of $296.83.

In March 1976 Pompano commenced the instant action against Schiavone and the Revised Pension Plan of Michael Schiavone & Sons, Inc. ("Plan"), for: damages for claimed violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.; release of his pension benefits in a lump sum, and for costs and attorneys fees. A bench trial was had on September 23, 1980 before the United States District Court for the District of Connecticut, Ellen B. Burns, Judge, which resulted in a judgment dated October 23, 1981 in favor of appellees dismissing the action. From that judgment this appeal is taken.

At issue is the Committee's range of discretion in the awarding of pension benefits, the procedures used by the Committee in exercising that discretion and whether Schiavone discriminated against appellant by not inviting him to a dinner for retiring employees.

I

This appeal raises questions the answers to which can be found only after an analysis of ERISA. To construe a statute we look first to the words actually used by the drafters, remembering that words are but signs that point to ideas. We may also examine the statute's legislative history to ensure that the meaning we have ascribed to these words fits their purpose, as that was what Congress intended. Legislators' expectations in creating laws are best described in Shakespeare's aphorism: "I endow'd thy purposes with words that made

them known."[1] *See,* Note, *Intent, Clear Statements, and The Common Law: Statutory Interpretation In The Supreme Court,* 95 Harv.L.Rev. 892 (1982).

ERISA provides that a "summary plan description of any employee benefit plan" must be furnished to participants and must be "written in a manner calculated to be understood by the average plan participant, ... sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1) (1976). The Plan, which made a lump sum payment available only with prior approval of the Committee, was written up in summary form in simple and unmistakable language easy enough for the average plan participant to be reasonably apprised of his rights and obligations under the Plan.

■ Included in the specific information which the summary of the plan must contain is a description of the "circumstances which may result in disqualification, ineligibility, or denial or loss of *benefits.*" 29 U.S.C. § 1022(b) (1976) (emphasis supplied). As the emphasis illustrates, and as the policy of Congress—"many employees with long years of employment are losing anticipated retirement benefits," 29 U.S.C. § 1001a (1976 & Pub.L.No.96-364, § 3, 94 Stat. 1208, 1209 (1980))—makes plain, the focus of concern is with circumstances that might cause a participant or beneficiary not to receive benefits. The summary of the Schiavone Plan included all that ERISA requires.

It is appellant's contention, however, that there existed a secret, unwritten rule which he claims violated section 1022(a)(1) because it denied lump sum benefits to long term employees. While it might appear plausible to argue that the summary should have enumerated the factors to be considered by the Committee in making its determinations, such a requirement would defeat the purpose of a summary, i.e., a brief restate-

ment. Such argument would also find little or no support in ERISA or its legislative history.

■ No specific mode of payment is provided for in ERISA. The policy considerations underlying the statute mandate the setting of standards only as to the fiscal soundness of a plan. 29 U.S.C. § 1001a. To accomplish that objective, standards of conduct, responsibility and obligation are imposed on the fiduciaries who control and manage each plan. They are required to act with the care and diligence of a "prudent man," *id.* at § 1104(a)(1)(B) (1976), and subject themselves to personal liability for a breach of that fiduciary duty, *id.* at § 1109(a) (1976). A reading of the statute's legislative history compels the conclusion that ERISA's purpose is to secure guaranteed pension payments to participants by insuring the honest administration of financially sound plans. *See* H.R.Rep.No.93-1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038-5190. Thus the plan must specify the basis on which payments are to be made to participants and beneficiaries, U.S.Code Cong. & Ad.News at 5078, so as to meet the legislative purpose of having each participant know exactly where he stands with respect to the plan. *See,* H.R.Rep.No.93-533, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4649. This requirement is not intended, however, to undercut the flexibility essential to effective and responsible financial management of the plan which Congress intended when it adopted for ERISA fiduciaries the "prudent man" standard. U.S.Code Cong. & Ad.News at 5083 (1974).

The trial court found no bad faith or arbitrariness on the part of Schiavone based on its denial of the lump sum payment to Pompano. The Plan's lump sum option was never granted lightly. The evidence showed that the Plan's actuaries had, in 1972, advised the Committee not to make lump sum payments for three reasons:

---

1. W. Shakespeare, *The Tempest,* Act 1, scene ii, *reprinted in The Complete Works of Shake-* speare, (W. Craig ed. 1928).

first, Plan assets might have to be sold in order to pay large lump sum amounts; second, free availability would complicate long term investment strategy; and third, such payments invalidate long term mortality assumptions. The Committee had previously granted some lump sum requests, but only where the requesting employee's lump sum payment was less than $3,000. Such did not constitute a drain on the fund and the minimal monthly payments on such a small vested amount would not have met the major purpose of the plan—assurance of a monthly income that one can retire on—and would have been a bookkeeping nuisance. An actuary testified that plaintiff's lump sum option amounted to $38,-172,[2] well over the $3,000 preclusion level set by the Committee. Concededly, the actuary testified that he did not know if there would have been any *actual* monetary loss to the Plan, whose assets were then $1,252,-000, if the plaintiff had been granted the lump sum amount. The trial court also found that the lump sum option was rarely granted; e.g., there was evidence that a company executive also had his request for a lump sum distribution turned down at approximately the same time as appellant. However, the court found that the Committee did not follow an arbitrary path, but instead listened to advice from its actuaries in formulating this policy.

Appellant's request could be detrimental to the other beneficiaries of the Plan and the Committee owed a fiduciary duty to them (as well as to appellant) to insure a stable retirement fund. 29 U.S.C. §§ 1101–1114 (1976 & Pub.L.No.96–364, 94 Stat. 1208 (1980)); *see also*, 29 C.F.R. 2550.404a–1 (1981). Such an amount, singly or in combination with other lump sum requests, can reasonably be said to be capable of having an adverse impact on the three factors mentioned in the actuaries' 1972 report and it was a matter entrusted to the Committee in their discretion to grant or deny this request.

2. Presumably, at current interest rates the monthly income on that amount would be ap-

We have stated that when a pension committee is acting within the law its discretionary acts should not be disturbed, absent a showing of bad faith or arbitrariness. *Riley v. MEBA Pension Trust*, 570 F.2d 406, 410 (2d Cir. 1977). The appellant is entitled to his benefits and is indeed receiving them but he had no absolute right under the Plan to the specific mode of payment that he requested. The trial court found that the trustees were not acting arbitrarily or in bad faith in denying this pensioner his lump sum request; additionally, there was no bad faith attempt by the trustees to confuse or mislead any Plan participants as to the lump sum distribution option. The plaintiff had notice of the fact that the lump sum option was at the discretion of the Committee and the trial court found such notice reasonably apprised appellant of his rights under the Plan. These findings are not clearly erroneous.

## II

Other errors that appellant claims were made by the Committee involved the failure of the trustees to observe certain procedural requirements of both ERISA and the company Plan, to wit: failure to send appellant a written notice of the denial of his claim (29 U.S.C. § 1133(1) (1976)), failure to give him an opportunity for review (29 U.S.C. § 1133(2) (1976)), failure to keep adequate records (29 U.S.C. § 1059(a)(1) (1976)); and failure to provide for arbitration of the dispute as the Plan requires.

The plaintiff argued that he should have been given notice in writing when the requested lump sum distribution was denied. Title 29 U.S.C. § 1133(1) specifically provides for written notice to a plan participant whose benefit claim is denied. The trial court held, however, that no benefits were denied plaintiff. Rather it was only the requested *mode* of distribution of these benefits that was denied to him; that denial was explained to him orally.

A reading of ERISA, together with its legislative history, supports the finding

preciably more than the monthly benefits Pompano now receives.

of inapplicability of § 1133(1) and (2) to this case. There is strong evidence to suggest that the procedural protection set forth in the statute is intended to safeguard the participants' substantive rights to receive benefits. The House Conference Report explains that § 1133 was included as a compromise means of requiring procedures for resolving certain disputes between the plan administrator and participants. The House bill contained no such provision and the Senate bill provided for review and arbitration of any dispute. The final compromise version only covers denial of a "claim for benefits." H.R.Rep.No.93–1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038, 5108. One of the Senate Managers of the Act, reporting to the Senate on the conference agreement stated that "prior to bringing an *action to recover benefits* from the plan, the participant . . . would have the right to receive written notice . . . of the special reasons his claim *for benefits* was denied; and, in addition, would be entitled to a full and fair review . . . of the decision to deny *such benefits.*" Id. at 5188 (emphasis supplied).

Another piece of evidence indicating that the thrust of the statute is the safeguarding of benefits is the establishment of the Pension Benefit Guaranty Corporation whose function it is to insure the timely and uninterrupted payment of benefits. 29 U.S.C. § 1302(a)(2) (1976). It is abundantly clear therefore that the purpose Congress had in mind was to provide safeguards to participants for the payment of their benefits. Neither the Act nor its legislative history comments on the mode or manner in which benefits should be paid. We do not intend to imply that the form which payment of benefits takes may never be such as to constitute a substantive denial of ERISA benefits. Appellant, however, is receiving his rightful due in monthly distributions. The inescapable conclusion is that the denial of the particular method of payment requested in this case did not, on the facts, constitute a denial of a "claim for benefits," and thus did not necessitate written notice and fair review under either § 1133(1) or (2).

Appellant's arguments with respect to arbitration and the failure of the Committee to keep written records are unavailing. The Plan itself expressly excluded from arbitration Committee decisions regarding the mode of benefit payments. As to record keeping there is no causal relationship between the conceded failure of the Committee to keep written records of their proceedings and the decision it made to deny appellant a lump sum benefit. The decision to deny appellant's request and the reason for it were communicated orally to him by the Committee.

## III

The last contention made is that Schiavone discriminated against Pompano by not inviting him to attend a company dinner honoring other retirees. It is unlawful for an employer to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right" under a pension plan of ERISA. 29 U.S.C. § 1140 (1976). The trial court found that the reason appellant was not invited to the company dinner was not because he had exercised his rights, but because the acrimony which had developed caused the company's officers reasonably to apprehend that if he attended, an unpleasant incident would occur ruining the dinner for those invited.

The trial court further found an absence of discrimination in the fact that although appellant was scheduled to retire on April, 1975 (the date of his 65th birthday), he requested and was twice granted postponements of retirement so that he did not actually leave employment until the end of December. The reason for this was to ameliorate the hard feelings engendered by the decision made on the pension benefits.

In our view it strains credulity to believe that the reach of § 1140 extends so far as to include a failure to invite a participant or beneficiary of a plan under ERISA to an employer sponsored social event. This section is designed to prevent "unscrupulous"

employers from discharging or harassing plan participants in order to keep them from realizing their vested pension rights. *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980).

In any event, these findings of fact made by the district court on this claim were not clearly erroneous.

An award of attorneys' fees was not made in the lower court and is not warranted on this appeal.

The judgment is affirmed.

MANSFIELD, Circuit Judge (dissenting):

I respectfully dissent. In my view the Schiavone pension plan violated ERISA in several significant respects, most notable of which is its representation that a single lump sum payment was available to all retirees with Committee approval when in fact Schiavone had a firm undisclosed rule prohibiting such payments to long-term retirees, of whom the plaintiff was one. The Act specifically authorizes a person in plaintiff's position to bring an action for relief against these violations, regardless whether benefits have been denied, as a means of ensuring compliance with the Act's full disclosure requirements.

The majority starts out on the erroneous premise that "[a]t issue is the Committee's range of discretion in the awarding of pension benefits [and] the procedures used . . . in exercising that discretion," p. 913, *supra*. It then proceeds to defend at length the denial of the lump sum payment as an exercise of discretion not based on bad faith or arbitrariness but grounded on sound economic considerations. The issue before us, however, is not the soundness of the Committee's exercise of discretion.[1] Nor is the economic basis or wisdom of a policy against lump sum payments being challenged. The issue is whether the Schiavone

plan summary complied with ERISA's express requirement that it be materially accurate. The answer is that the summary, by failing to disclose an "unwritten general rule" against lump sum payments to long-term retirees, which was found by the district court to exist and is not disputed by the majority, was misleading and therefore violated the Act.

Section 502 of the Act, 29 U.S.C. § 1132, entitled "Civil enforcement," empowers any participant or beneficiary to enforce rights created by ERISA, whether or not a loss or denial of benefits is involved. Subsection (a)(1)(B) authorizes a suit by a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

In addition, subsection (a)(3) permits private actions to enforce a plan's compliance with its own terms or with the requirements of the Act, authorizing suits

"by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Subsection (c) further provides that a participant may sue an administrator for $100 per day for failing to provide "any information" he is required to furnish, except when excused by "reasons beyond the control of the administrator." 29 C.F.R. § 2520.102-3(t)(2). These compliance suits are expressly not conditioned on a loss or denial of benefits; indeed, they may proceed even where the plaintiff is not claiming any benefits.[2] In addition, participants may also

---

1. Even if the Committee's exercise of discretion were an issue, there is no evidence that the denial of lump sum benefits to plaintiff in this case involved a particularized determination by the Committee not to grant his request.

2. See, e.g., *Lechner v. National Benefit Fund for Hospital and Health Care Employees*, 512

F.Supp. 1220 (S.D.N.Y.1981) (suit by nonclaimant to prevent possible future violations); *International Ass'n of Bridge, Etc. v. Douglas*, 646 F.2d 1211 (7th Cir. 1981) (suit under 29 U.S.C. § 1132(a)(1)(B) challenging plan amendment that *might* affect unspecified future participants); *Corley v. Hecht Co.*, 530 F.Supp. 1155 (D.D.C.1982) (misleading plan summary

sue an administrator for violation of his fiduciary duties under §§ 401 to 414 of the Act, 29 U.S.C. §§ 1101 to 1114, without showing any denial or loss or claim of benefits.[3] These provisions effectuate Congress' clear intention that ERISA's requirements be applicable and enforceable by private suits independent of any claim for benefits, in order to provide participants with broad and expansive rights and remedies for redressing or preventing violations of the Act.[4]

The Schiavone plan summary stated that the lump sum payment option was available to all participants subject to the Committee's approval. In reality, however, under the "unwritten general rule" long-termers and retirees were ineligible for the option. This ineligibility appears nowhere in the plan summary. The plan therefore violates § 102(b) of the Act which requires a plan summary to describe all the

> "circumstances which may result in disqualification, ineligibility, or denial of benefits . . . ." 29 U.S.C. § 1022(b).

The majority, focusing on the phrase "of benefits," suggests that the disclosure requirements does not apply to a plan's mode of payment. Such a narrow reading cannot be squared with other provisions of the Act, regulations promulgated thereunder, and Congress' intent. Section 2(b) of the Act declares that the "policy of this Act" is to require "the disclosure and reporting to participants and beneficiaries of *financial and other information* with respect to the plans," 29 U.S.C. § 1001 (emphasis added), and § 102(a)(1) of the Act requires the summary to be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). These unqualified statements of a broad disclosure requirement reflect Congress' desire to ensure "that the individual participant *knows exactly where he stands* with respect to the plan." H.R.Rep.No.93–533, 93d Cong., 1st Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 4639, 4649 (emphasis added).

The full scope of the disclosure policy is further reflected in the regulations. Regulation § 2520.102–2(b) provides in part that

> "the summary plan description must not have the effect to [sic] misleading, misinforming or failing to inform participants and beneficiaries. [Any] exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized . . . 29 C.F.R. § 2520.102–2(b). See also 29 C.F.R. § 2520.102–3(t)(1)."

The summary must "clearly identify circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture or suspension of any benefits," 29 C.F.R. § 2520.102–3(1), which encompasses "claims which are denied in whole or in part." *Id.* at subsection (s). See also *id.* at subsection (t)(2); 29 C.F.R. § 2560.503–1(e)(1).

Schiavone's unwritten rule, which renders certain participants ineligible for a form of payment that is particularly valuable in times of high interest rates, surely constitutes an exception, limitation, reduction, or restriction of plan benefits which any "accurate and comprehensive" summary must include if a retiring employee is to know "exactly where he stands with respect to the plan." The plan gave the impression that the Committee would exercise discretion with respect to all retirees, including

violates disclosure requirements of 29 U.S.C. § 1022(a)(1); *Janowski v. International Brotherhood of Teamsters Local No. 710*, 500 F.Supp. 21 (N.D.Ill.1980) (challenging various aspects of new plan).

3. See, e.g., *International Ass'n of Bridge, Etc. v. Douglas, supra; Morrisey v. Curran*, 567 F.2d 546 (2d Cir. 1977) (seeking liquidation of unsound investment); *Corley v. Hecht Co., supra* (prohibiting financial transactions between fiduciary and plan).

4. See H.R.Rep.No.93–533, 93d Cong., 1st Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 4639, 4655; S.Rep.No.93–127, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 4838, 4871. See also *Lechner v. National Benefit Fund for Hospital and Health Care Employees, supra*, 512 F.Supp. at 1221–22 & n.6; *Kulchin v. Spear Box Co. Retirement Plan*, 451 F.Supp. 306, 311 (S.D.N.Y.1978); *Lewis v. Merrill Lynch, Pierce, Fenner & Smith*, 431 F.Supp. 271, 274 (E.D.Pa.1977).

long-termers, whereas in fact it would exercise none in the case of the latter. I would hold, therefore, that Schiavone violated § 102(b) of the Act by failing to disclose in the plan summary the rule that participants with accrued benefits over $3,000 would not be eligible for the lump sum option. See, e.g., *Corley v. Hecht Co.*, 530 F.Supp. 1155, 1163–64 (D.D.C.1982). A simple statement of the rule would have sufficed; thus the majority's objection to a lengthy enumeration of factors is misplaced. Maj.Op. p. 914, *supra.*

The Schiavone plan also violated the procedural protections provided in § 503 of the Act, 29 U.S.C. § 1133, by failing to give Pompano written notice of his denial and an opportunity for a full and fair review.[5] The majority limits § 503 to a denial of benefits, and holds that written notice and an opportunity for review are not required for the denial of a requested mode of payment. The rationale for such a distinction escapes me, since the regulations mandate § 503's procedural safeguards whenever "a claim for a (pension, welfare) benefit is denied in whole *or in part.*" 29 C.F.R. § 2520.102–3(t)(2) (emphasis added). The denial of the requested lump sum payment, which clearly reduced the value to Pompano of his pension, certainly constitutes a partial denial of his claim. Moreover, the legislative history of § 503 reveals that Congress was concerned with procedures for resolving and reviewing "*disputes* between the plan administrator and participants or beneficiaries," H.R.Rep.No.93–1280, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 5038, 5108 (emphasis added), which would encompass more than the outright denial of all benefits. Finally, § 503 must be interpreted in light of ERISA's strong concern with ensuring strict plan compliance with the Act. Accordingly, I would hold that Schiavone violated § 503

of the Act. See *Frary v. Shorr Paper Products, Inc.*, 494 F.Supp. 565 (N.D.Ill.1980), where the court held that the wrongful denial of a participant's request for a lump sum payment of benefits violated "his rights under the terms of the plan" (29 U.S.C. § 1132(a)(1)(B)) and ordered the lump sum payment be made.

Finally, I would also hold that Schiavone's failure to maintain written records, expressly required by the terms of the plan, is a violation of the Act that is actionable under § 502(a)(3), 29 U.S.C. § 1132(a)(3). The majority concedes implicitly that the district court erred in characterizing § 502(a)(3) as merely conferring standing by stating, in an attempt to sidestep this clear violation, that "there is no causal relationship between the conceded failure of the Committee to keep written records of their proceedings and the decision it made to deny appellant a lump sum benefit." Maj.Op. p. 916, *supra.* With all due respect, this explanation, offered without any authority and devoid of any basis in the statute, is unsupportable. As noted earlier, ERISA expressly authorizes compliance suits independent of any claim for benefits, and such suits have been brought, for example, to prevent possible future violations, to challenge various aspects of a new plan, and to object to an amendment to a plan that may affect the future eligibility of unspecified participants. See note 2, *supra.* The majority's holding engrafts onto § 502 a requirement that the alleged violation of ERISA must be "causally related" to some denial of benefits. Because this can be done only by disregarding the clear terms of the Act, its legislative history and existing case law, I decline to follow that course.

In sum, I would hold that the plan summary (1) was deficient in violation of § 102(b) by reason of its failure to disclose the unwritten rule against lump sum pay-

---

5. Section 503 provides:
   "In accordance with regulations of the Secretary, every employee benefit plan shall—
   (1) provide adequate notice in writing to any participant whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written

in a manner calculated to be understood by the participant, and
   (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

ments to long-term retirees, (2) failed in violation of § 503 to provide a written notice of the denial of such payments and an opportunity for review, and (3) failed in violation of § 502 to maintain written records as required by that section.

As a remedy I would award Pompano his requested lump sum payment, since such an award would further the purposes of the Act to ensure that administrators comply strictly with its provisions. See *Frary v. Shorr Paper Products, Inc., supra,* 494 F.Supp. at 471 (ordering lump sum payment as remedy). In addition, I would award attorney's fees to Pompano's counsel pursuant to 29 U.S.C. § 1132(g)(1) for his services in clarifying and enforcing rights under the Act. See *Landro v. Glendenning Motorways,* 625 F.2d 1344, 1356 (8th Cir. 1980).