**David K. KADANE, Plaintiff,**

v.

**HOFSTRA UNIVERSITY, Defendant.**

**No. 85 CV 2652.**

United States District Court, E.D. New York.

Jan. 19, 1988.

Opinion on Reargument Feb. 22, 1988.

**167**

MEMORANDUM AND ORDER

PLATT, District Judge.

Both plaintiff and defendant move this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. Each party contends that there are no genuine issues of material fact and that each is entitled to judgment as a matter of law.

Following submission of briefs by both sides and oral argument on the motions of July 10, 1987, the Court requested oral testimony to clarify several questions of fact. This Court heard testimony on September 9, September 16, and November 6, 1987, and then requested briefs on the issues of the meaning of modification, benefits and ineligibility under the applicable statute and regulations. Those briefs were duly submitted.

In his complaint, Kadane alleged that Hofstra University (Hofstra or the University) violated the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–34 (1982), and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. §§ 1001–461 (West 1985 and Supp.1987), by failing to notify him that it discontinued payment of employer contributions to the Hofstra pension plan when Kadane reached the age of 65. Kadane also asserted several State claims, which he has since withdrawn. Plaintiff has not addressed the ADEA claim in his motion for summary judgment and has failed to respond to defendant's contention that the cessation of benefits at 65 is permissible under ERISA and, consequently, there is no violation of the ADEA, so that claim is deemed conceded. Therefore, his only remaining federal claim is, succinctly stated, that Hofstra has violated ERISA by failing to adequately disclose that Kadane's "benefits" under the Plan were to cease at age 65 regardless of the fact that he continued to work beyond such date or to give notice to him that the Plan had been modified or changed in that respect, and, consequently, he was caused to lose benefits under or become ineligible to participate in the Plan.

Ressa, Nappi & Weinig by Harvey Weinig, Port Washington, N.Y., for plaintiff.

Baer Marks & Upham by Stuart H. Bompey, Jill L. Rosenberg, New York City, for defendant.

FACTS

David Kadane was employed by Hofstra University as a full time faculty member at its Law School from September 1970 through the academic year of 1983–84 with the exception of an unpaid leave in the Fall Semester of the 1981–82 academic year. He was granted tenure in 1975.

Prior to joining Hofstra, Kadane graduated from Harvard Law School in 1936 and practiced law in New York. His practice included seven years at the Securities and Exchange Commission and 21 years (with a two year leave of absence) as General Counsel for Long Island Lighting Company.

As part of its compensation package for its employees, Hofstra maintains a defined contribution employment plan (the Plan) in compliance with ERISA, 29 U.S.C.A. §§ 1001–461 (West 1985 and Supp.1987). All faculty and other employees are eligible to participate in the Plan after one year of employment and 30 years of age. The Plan was initially adopted by Hofstra in 1944. It was codified in 1976 to comply with the newly enacted ERISA. From the inception of the Plan in 1944 to date, Hofstra has made no contributions for employees after they reach 65. It is undisputed that there has been no modification or change in the Plan in this respect whatsoever to date.

Prior to 1976 Hofstra required faculty members to retire by the end of the academic year when they became 65. Age 65 was defined as the "Normal Retirement Age."[1] As had always been the practice, as indicated, Hofstra ceased making Plan contributions on behalf of all employees when they reached 65.

Hofstra amended its Plan in 1976 to allow faculty members to work up to age 68

with the approval of the Hofstra Board of Trustees. Effective in 1979 Hofstra again amended its Plan to allow employees to work until age 70. This amendment changed the mandatory retirement age to conform to amendments to the ADEA, 29 U.S.C. §§ 621–34 (1982). However, Normal Retirement Age under the Plan remained 65 and the University continued to cease making contributions after employees reached that age.

Hofstra communicated these changes in various ways. A Summary Plan Description (SPD), as required by ERISA, was mailed to all participants in the Plan via intra-University mail in 1972, 1982, and 1985. The 1972 and 1982 SPD's stated the Normal Retirement Age. Information about the 1979 amendment to the Plan was distributed in the form of University Policy Series No. 111 to all academic and administrative offices at Hofstra, including the Dean's Office and the Library at the Law School. This statement asserted clearly that the University would not continue Plan contributions past age 65. The 1979 change in the Mandatory Retirement Age was also indicated in *Your Guide to Fringe Benefit Programs at Hofstra University,* distributed in March 1982 to all participants in the Plan in individually addressed envelopes via intra-University mail. The *Guide* also clearly informed participants that University contributions ceased at age 65. This *Guide* was intended by the University to supplement the SPD. Transcript of Hearing at 128 (Sept. 16, 1987).

The University's policy of discontinuing Plan contributions at age 65 was a subject of discussion in the 1979 and 1982 collective bargaining negotiations and the primary issue in a 1979 strike by Hofstra faculty belonging to the American Association of

---

1. "Normal Retirement Age" is defined in the statute as;
   "the earlier of—
   (A) the time a plan participant attains normal retirement age under the plan, or
   (B) the later of—
   (i) the time a plan participant attains age 65, or
   (ii) the 10th anniversary of the time a plan participant commenced participation in the plan." 29 U.S.C. § 1002(24) (1982).

The pertinent regulations require that a Summary Plan Description for an employee pension benefit plan include "a statement describing the plan's normal retirement age as that term is defined in Section 3(24) of the Act [29 U.S.C. § 1002(24) ] and a statement describing any other conditions which must be met before a participant will be eligible to receive benefits. Such plan benefits shall be described or summarized." 29 C.F.R. § 2520.102-3(j)(1).

University Professors (AAUP). The collective bargaining agreements between the University and the AAUP do not specifically cover Law School faculty, but the benefits agreed to during these negotiations are generally adopted by the Law School Committee. The contribution rates to the Plan are determined by the AAUP negotiations. Transcript of Hearing at 157 (Sept. 16, 1987). The 1979 and 1982 Collective Bargaining Agreements specifically stated that no contributions would be made by the University after age 65. After the 1979 strike was settled, the Law School Committee adopted all the fringe benefits in the 1979 agreement, except certain medical benefits. Kadane was on the Law School Committee that negotiated the 1979–82 Law School agreement.

In addition, Hofstra sent each employee an annual Fringe Benefits Report showing anticipated Plan contributions for the next year. These reports were either mailed with an employee's paycheck or held in the payroll office for employees, such as Kadane, whose checks were directly deposited. For Kadane, the Fringe Benefit Reports showed that University contributions ceased beginning in the 1980–81 academic year. TIAA–CREF, the administrator of the Plan also sent annual reports showing combined individual and University contributions. Further, each biweekly pay stub contained information about University and individual contributions.

Kadane became 65 on April 9, 1979. He extended his full-time employment until the end of the 1983–84 academic year when he became 70. Since that time Kadane has been a professor emeritus and has taught one course at Hofstra per semester.[2]

Kadane claims that he was unaware that Hofstra had ceased contributing to the Plan on his behalf until December of 1984 when he became concerned about inflation. Transcript of Hearing at 17 (Sept. 9, 1987). At that time, he picked up his pay stubs that he had left in the payroll office and which had accumulated since he began having his check directly deposited in June 1982 and says he discovered that Hofstra contributions had ceased when he became 65. Transcript of Hearing at 18–19 (Sept. 9, 1987). This alleged discovery was set forth in a memo dated January 24, 1985, from Anthony Procelli, Vice President of Hofstra.

DISCUSSION

Plaintiff contends that Hofstra failed to disclose that his benefits ceased and that it modified his benefits under the Plan without giving notice as required by ERISA. The relevant section of ERISA, section 1022(b) of 29 U.S.C., requires that the Summary Plan Description contain, in part: "the plan's requirements respecting eligibility for participation and benefits; ... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits...." Further, section 1024(b)(1) requires that participants be informed of all Plan modifications or changes within 120 days. 29 U.S.C. § 1024(b)(1) (1982).

The plaintiff states that when Hofstra ceased to contribute to the Plan when he reached 65, it caused him to lose Plan benefits without notice and that Hofstra additionally modified the Plan without notice. Plaintiff bases this claim on a belief that "Hofstra's contributions to his retirement fund were a 'benefit' to him as that word is used in the statute." .Letter of Harvey Weinig to the Court (Nov. 3, 1987). Plaintiff is confusing an employee fringe benefit or contribution from his employer arising from the law school faculty agreement with the defendant with Plan benefits. Employer contributions are not benefits within the meaning of the statute.[3] The statutory requirement that the SPD set forth the requirements regarding eligibility for Plan benefits requires notice of eligibility to receive paid-out benefits, not notice of contributions paid in by an em-

2. Except for the first semester of 1987–88 when he took a leave of absence.

3. The statute and the regulations make a distinction between the terms benefit and contribution. "Benefits" are clearly amounts paid out of the plan to participants, see 29 U.S.C. § 1002(22)–(23), while "contributions" are amounts paid into the plan, see 29 C.F.R. § 2520–102–3(p) (1987).

ployer. *See* 29 C.F.R. § 2520.102–3 (1987). In fact, in the legislative history a clear distinction is made between the terms "benefit" and "contribution." *See* H.Rep. No. 807, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4671, 4686, 4729. The primary concern of Congress in enacting ERISA was that those who had paid in would not be deprived of retirement benefits by disqualification or ineligibility. *Pompano v. Michael Schiavone & Son, Inc.*, 680 F.2d 911, 914 (2d Cir.), *cert. denied*, 489 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982); H.Rep. No. 533, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4666. The statute was enacted because many long term employees were losing retirement benefits. *Id.* Thus, the Hofstra policy not to make contributions after an employee became 65 may have deprived the plaintiff of employee benefits, but it did not relate to his eligibility to receive benefits under the Plan. The fact that these employer contributions are transformed into Plan benefits as they are paid out pursuant to the Plan does not make the contributions plan benefits. Plaintiff has not been denied benefits within the meaning of the statute.

■ Even if we were to say, *arguendo*, that Hofstra contributions to the Plan were benefits under the statute and that the SPD failed adequately to inform him that contributions would not be made after age 65, Kadane had actual knowledge that these contributions would cease at age 65. (If he was not consciously aware that he contributions ceased, his failure to recognize this fact was tantamount to gross negligence, recklessness or conscious avoidance.) Kadane was on the Law School Committee that adopted the benefits under the 1979 Collective Bargaining Agreement for the Law School. The fact that a small change was made in the medical benefits shows that benefits were discussed. It would have been the height of irresponsibility for Kadane not to have reviewed the benefit package as a member of the committee. In addition, these meetings followed a strike in which the cessation of contributions after 65 was the principal issue. Again, Kadane would have had to consciously avoid or to be totally oblivious to events around him and an irresponsible member of the committee not to have been apprised of this issue.

In that same vein, in his testimony at the hearing Kadane, an experienced lawyer, demonstrated that he completely failed to make any effort to educate himself on the subject of the pension plan. It is doubtful that he ever actually read any of the documents related either to the pension plan or his fringe benefits. He never made any inquiries about the University contributions. Further, he did not pick up his pay stubs and Fringe Benefit Reports for nearly two and a half years from June 1982 through December 1984. This behavior in and of itself shows a conscious avoidance and a total lack of diligence or inclination to educate himself and is again tantamount to recklessness.

Finally, plaintiff contends that the *benefits* under the Plan were *modified* and that ERISA, 29 U.S.C. § 1022(b), required that Hofstra notify participants of changes in "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits...." *Id.* Again, assuming *arguendo* that these contributions are benefits as the term is used in the statute, the only modification Hofstra made to the Plan (relevant to this matter) was to change the Mandatory Retirement Age in 1979 to conform to the requirements of the ADEA. Hofstra notified participants of this modification, as required by section 1024(b)(1). *See* 29 U.S.C. § 1024(b)(1) (1982). Kadane, in fact, benefited from this change because he was not compelled to retire by taking emeritus status until after his 70th birthday in 1984. Hofstra never modified its policy, dating back to the inception of the Plan, of terminating Plan contributions on behalf of an employee when the employee reached age 65.

Thus, Hofstra did not violate the provisions of ERISA. It may not have made its policy as clear as one might wish, but it did not act so as to deprive plaintiff of benefits or modify its Plan without notifying Plan participants.

Summary judgment is, accordingly, granted in favor of defendant and denied to plaintiff.

SO ORDERED. Submit judgment consistent with the above.

### ON REARGUMENT

Plaintiff moves pursuant to Federal Rules of Civil Procedure 52(b) and 59(e) and Civil Rule 3(j) of the Rules for the Southern and Eastern Districts of New York (Local Rules) for reargument and amendment of the Court's Memorandum and Order dated January 19, 1988 [docketed Jan. 22, 1988]. Specifically, plaintiff complains that the Court erred in stating that plaintiff conceded his claim under the ADEA.

Federal Rule of Civil Procedure 52(b) allows amendment of a judgment by the trial court and Rule 59(e) requires that a motion to amend be made within 10 days of the entry of the judgment. The judgment in this case was entered on February 2, 1988, and the motion filed on February 11, 1988, so its timeliness is unquestioned. Further, under Local Rule 3(j), the notice of motion for reargument must set forth the factual matters or controlling decisions that counsel believes the Court overlooked.

Plaintiff believes that the Court failed to consider whether plaintiff had actual notice of the cessation of contributions by Hofstra University to the pension plan on his behalf after he reached age 65 under the ADEA as well as ERISA.

■ Plaintiff does concede, as the Court concluded in its prior Order, that cessation of contributions at age 65 does not violate the ADEA, as long as plan beneficiaries have notice of the employer's intention to cease its payments into the plan. Although the Court did not directly address the issue of whether plaintiff had adequate notice pursuant to ADEA, it did conclude, as an alternative holding, that plaintiff had actual notice as required under ERISA. The requirements of the ADEA are satisfied if the requirements of ERISA are satisfied. *See* 29 U.S.C. § 623(f)(2) (1982). Therefore, the Court's holding that the notice given plaintiff satisfied the requirements of

ERISA demands a corollative conclusion that the requirements of the ADEA are satisfied.

Accordingly, to satisfy plaintiff's request, this Court's January 19, 1988 Memorandum and Order is hereby amended in that this Court additionally holds that the notice requirements of the ADEA, as well as those of ERISA, are satisfied by the actual notice received by plaintiff from the University. The University has violated neither ERISA nor the ADEA.

SO ORDERED.

