**David FRARY, Plaintiff,**

**v.**

**SHORR PAPER PRODUCTS, INC., an Illinois Corporation; Robert Shorr, Individually; and the Shorr Paper Products, Inc. Employees Profit Sharing Plan and Profit Sharing Trust, Defendants.**

**No. 79 C 5275.**

United States District Court,
N. D. Illinois, E. D.

April 24, 1980.

Richard L. Horwitz, Aurora, Ill., for plaintiff.

Goldsmith, Thelin, Schiller & Dickson, Aurora, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

*Motion to Dismiss and Cross-motions for Summary Judgment*

Plaintiff David Frary brings this action against Shorr Paper Products, Inc. (Shorr Paper), Robert Shorr (Shorr), and the Shorr Paper Products, Inc. Employees' Profit Sharing Plan and Profit Sharing Trust (the "Plan") under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1381.[1] Plaintiff was an employee of Shorr Paper from November, 1970 to November, 1978 and a participant in and beneficiary of the Plan. As of November 20, 1978, plaintiff's interest in the Plan amounted to $9,887.54. Dieter Affidavit, ¶ 12. Shorr Paper is the Manager of the Plan and Shorr is a trustee of the Plan. The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1132(e).

The gravamen of plaintiff's complaint is that he is being treated differently than other similarly situated former employees under the Plan because he has been denied early lump sum payment of his vested, nonforfeitable interest in the Plan. Section 5.4 of the Plan, as amended, provides that when an employee's termination is for a reason other than death, disability, or normal retirement, the employee's right to distribution of his interest in the Plan shall commence during the 60 day period following the end of the Plan year during which the later of the employee's retirement or normal retirement date occurs. Plan, as amended § 5.4. Notwithstanding the foregoing, subsection (c) of section 5.4 vests with the Manager of the Plan the discretion to distribute to an employee terminated for a reason other than death, disability, or normal retirement his interest in the Plan

at a time earlier than that provided for in subsection (b). *Id.* § 5.4(c). Subsection (c) requires that the discretion exercised thereunder by the Plan Manager be exercised in accordance with a uniform and nondiscriminatory policy. *Id.* When the Plan Manager decides to distribute early, it is also within his discretion, in accordance with a uniform and nondiscriminatory policy, to decide whether distribution shall be had by way of a lump sum or installments. *Id.*

Plaintiff does not assert that any of the Plan's provisions violate the terms of ERISA. Rather, it is plaintiff's contention that to his knowledge every other Shorr Paper employee whose termination was for reasons other than death, disability, or normal retirement has received a lump sum payment of his interest in the Plan upon his request. Plaintiff alleges that the basis for the discriminatory treatment which he has allegedly received is the fact that after he left Shorr Paper he became employed by one of its competitors. Pending before the Court is defendants' motion to dismiss or for summary judgment and plaintiff's cross-motion for summary judgment. For the reasons set forth below, defendants' motion to dismiss is denied; defendants' motion for summary judgment is granted as to defendant Shorr and otherwise denied; and plaintiff's motion for summary judgment is granted as to defendants Shorr Paper and the Plan.

## Motion to Dismiss

■ Defendants' motion to dismiss sets forth three arguments: (1) that plaintiff's complaint fails to state a claim under ERISA; (2) that Shorr is not a proper party to this action; and (3) that plaintiff is under no circumstances entitled to recover punitive damages under ERISA. Under federal pleading practice, the requirements of stating a claim are two-fold. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). First, the allegations of the complaint must

---

1. ERISA provides that an employee pension plan itself is a suable entity in an action brought under ERISA. 29 U.S.C. § 1132(d).

give the adverse party sufficient notice of the claim asserted. Fed.R.Civ.P. 8(a); *Conley v. Gibson*, 355 U.S. at 47, 78 S.Ct. at 102. As to this requirement, the Court finds plaintiff's allegations to be more than adequate.

▪ Second, accepting all of the well-plead allegations of the complaint as true, it must state a claim upon which some relief can be afforded. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. at 101–102. ERISA authorizes the commencement of an action by a participant in a Plan to, *inter alia*, "enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Therefore, accepting plaintiff's allegations as true, the Court also finds that his complaint states a claim under ERISA. Plaintiff alleges that pursuant to the terms of the Plan, defendants have in the past honored the requests of terminated employees that they receive their interests in the Plan early and in a lump sum. Complaint, ¶ 9. Plaintiff further alleges that defendants' refusal to honor his request for an early and lump sum payment caused him to be treated differently under the Plan than other employees terminated under similar circumstances. Complaint, ¶ 11. Plaintiff alleges that this different treatment was in violation of both the language of the Plan calling for nondiscriminatory treatment and federal law. *Id.* Therefore, the Court finds that plaintiff has stated a claim to enforce his rights under the Plan.

As to the other two arguments made by defendants in connection with their motion to dismiss, since those matters are resolved in defendants' favor in the discussion below, the Court does not reach those arguments at this point. In sum, the Court thereby denies defendants' motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

### Motion for Summary Judgment

▪ Plaintiff's complaint alleges that Shorr is the Manager of the Plan. Complaint, ¶ 5. However, the record discloses that Shorr Paper is the Plan Manager and that Shorr's role with respect to the Plan is

that of trustee. Dieter Affidavit, ¶ 2; Defendants' Exhibit C. While genuine factual issues may not be resolved by way of summary judgment, a plaintiff may not rest upon the bare allegations of his complaint to rebut a properly supported summary judgment motion and withstand the motion. *First National Bank Co. v. Insurance Company of North America*, 606 F.2d 760, 768 (7th Cir. 1979). Under the Plan, it is the province of the Plan Manager to decide whether a terminated employee shall receive early payment of his interest in the Plan. Plan, as amended, § 5.4(c). Apart from plaintiff's incorrect allegation that Shorr is the Plan Manager, plaintiff does not specifically allege that Shorr was in any way responsible for the acts of which plaintiff complains. Accordingly, defendants' motion for summary judgment is hereby granted insofar as it seeks judgment in favor of Shorr.

The Court now turns to the principal issue presented to it by the instant motions. Namely, whether defendants' refusal to distribute to plaintiff his interest in the Plan early and in a lump sum, because of his employment with a competitor of Shorr Paper after his termination from Shorr Paper, is violative of the Plan or the Act. This question appears to be one of first impression. The Court prefaces its discussion of the applicable law by noting its conclusion that there are no disputed factual issues herein which are material to the Court's resolution of this question. *See* Fed.R. Civ.P. 56(c).

Defendants acknowledge that plaintiff was not paid his interest in the Plan early pursuant to section 5.4(c) because after he left Shorr Paper's employ he assumed employment with one of its competitors. In support of their motion for summary judgment, defendants first argue that the Plan Manager has absolute discretion to decide whether an employee shall receive his interest in the Plan early. Alternatively, defendants assert that plaintiff's employment with a competitor of Shorr Paper's violated the terms of his employment contract with

Shorr Paper.[2] Defendants maintain that prior to plaintiff's termination with Shorr Paper, Shorr Paper, as Manager of the Plan, had a policy within the meaning of section 5.4(c) of the Plan of declining to make early payments to employees who breached their employment contracts. Dieter Affidavit, ¶ 17. Defendants argue that such a policy is not violative of the Plan or ERISA.

■ First, the Court rejects as wholly untenable defendants' argument that the Plan Manager's discretion is unbridled as to whether an employee shall receive his benefits early. The Court's reading of section 5.4(c) leaves no doubt that the terms of the Plan impose a requirement upon the Plan Manager that any benefits be made in accordance with a nondiscriminatory policy. Also, while the courts recognize that they should be hesitant to interfere with the administration of pension plans, they have consistently required that any discretion vested with persons charged with administering a pension plan may not be exercised arbitrarily or capriciously. *Bueneman v. Central States, Southeast Southwest Areas Pension Fund*, 572 F.2d 1208, 1209 (8th Cir. 1978), and cases cited therein. *Cf., Johnson v. Botica*, 537 F.2d 930, 933 (7th Cir. 1976). More importantly, however, section 1104 of ERISA and section 10.3 of the Plan mandate that Plan fiduciaries discharge their duties under the Plan "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104; Plan, as amended, § 10.3. The Court's reading of section 1104 is dispositive of the question presented herein.

■ It is generally recognized that when, as in the instant case, a plan is administered by the employer, the purpose of a policy of not granting early benefits to employees who terminate their employment relationship and then become employed with a competitor is to protect the employer. *Golden v. Kentile Floors, Inc.*, 512 F.2d 838, 846 (5th Cir. 1975); *Keller v. Graphic Systems of Akron, Inc., Employee's Profit Sharing Plan*, 422 F.Supp. 1005, 1012 (N.D.Ohio 1976); *Martinez v. Alto Employee's Trust*, 273 So.2d 735 (La.App.1972), *cert. denied*, 277 So.2d 675 (La.1973); *See generally* Lee, *ERISA's "Bad Boy": Forfeiture for Cause In Retirement Plans*, 9 Loy.Chi.L.J. 168 (1977). More specifically, such a policy is designed, *inter alia*, to protect the integrity of employment contracts and to prevent a former employee from placing his plan benefits at the disposal of a competitive enterprise. Defendants in the instant case have admitted that its complained of policy is, in effect, designed to punish employees who assume employment with a competitor and thereby breach their employment agreements. *E. g.*, Dieter Affidavit, ¶ 17. Indeed, defendants have not offered *any* justification for their policy which serves an interest of the Plan's participants or beneficiaries. Hence, in view of defendants' duty to administer the Plan *"solely* in the interest of participants and beneficiaries," the Court finds that plaintiff is entitled to judgment as a matter of law. 29 U.S.C. § 1104 (emphasis added); Plan, as amended, § 10.3. *See Martinez v. Alto Employee's Trust*, 273 So.2d 735.[3] Accordingly, plaintiff is hereby granted summary judgment as to defendants Shorr Paper and the Plan.[4]

---

**2.** Shorr Paper has instituted an action in the Illinois courts on the basis of plaintiff's alleged violations of the employment contract. *Shorr Paper Products, Inc. v. Frary*, No. 78 CH 11720 (Circuit Court Kane County, Illinois, filed Nov. 27, 1978).

**3.** The *Martinez* decision is instructive because it concerned a similar challenge to a plan policy pursuant to a Louisiana statute containing the same language with respect to fiduciary duty as found in the pertinent portions of section 1104 of ERISA and section 10.3 of the Plan. There, the court found such a policy to be violative of the applicable Louisiana statute.

*Martinez v. Alto Employee's Trust*, 273 So.2d 735.

**4.** The fact that plaintiff has never presented a formal motion for summary judgment to this Court does not bar the Court from granting plaintiff judgment. *Morrissey v. Curran*, 423 F.2d 393, 399 (2d Cir. 1970), *cert. denied*, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796; 6 Moore, *Federal Practice*, ¶ 56.12. In the event, however, that defendants Shorr Paper and the Plan feel they received insufficient notice of plaintiff's motion to adequately respond thereto, the Court invites a properly supported motion to reconsider.

Those defendants are hereby ordered to pay to plaintiff in a lump sum his vested, non-forfeitable interest in the Plan.

### Punitive Damages, Attorney's Fees, and Costs

In plaintiff's response to defendants' motion, in which he requests summary judgment in his favor, plaintiff waives his claim for punitive damages only for the purposes of his cross-motion for summary judgment. Plaintiff's Response Brief, p. 9. Therefore, having decided to grant plaintiff's motion, the Court need not reach the question of the availability of punitive damages.

With respect to plaintiff's request for attorney's fees and costs, ERISA specifically authorizes the Court, in its discretion, to grant such relief. 29 U.S.C. § 1132(g). In exercising its discretion, the Court should consider the following factors: (1) the degree of the offending parties culpability; (2) the ability of the offending parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; and (4) the relative merits of the parties' positions. *Baeten v. Van Ess*, 474 F.Supp. 1324, 1332 (E.D.Wis.1979). Applying these factors to the facts of the instant case, the Court finds that an award of attorney's fees and costs is justified.

The Court presumes that the remaining two defendants are fully capable of satisfying an award of attorney's fees and costs without endangering their respective economic lives. As to defendants' culpability and the relative merits of the parties' positions, while the Court recognizes that the dispute between the parties is a novel one under a recently enacted statute, a quick reading of section 1104 and section 10.3 of the Plan should have dissuaded defendants from embarking upon a policy which appears only to serve the employer's interests. Moreover, the record strongly suggests that defendants' avowed policy of disfavoring employees who breach their employment contracts is not a *bona fide* policy of Plan administration which pre-existed plaintiff's termination. Defendants have in no way suggested that their avowed policy ever existed other than in the minds of the defendants' officers. Defendants admit that they have never had occasion to invoke this policy other than with regard to plaintiff. Section 10.1 of the Plan empowers the Plan Manager to adopt such rules and regulations as he deems necessary for Plan administration. Plan, as amended, § 10.1. It stands to reason, at least in the Court's mind, that rules or policies of Plan administration should be reduced to writing. Indeed, basic notions of fairness dictate that any rule or policy of Plan administration be in a form which makes them knowable to the Plan's participants. In short, the record suggests that defendants' avowed policy was no policy at all, but rather a post-hoc rationalization for its attempt to improperly punish plaintiff for his alleged breach of his contract of employment with Shorr Paper. The Court does not intend to belittle the integrity of employment contracts or to encourage their breach; however, Shorr Paper should seek the relief it desires solely through its state court contract action.

Finally, the Court believes that an award of attorney's fees and costs would serve the salutary purpose of deterring plan fiduciaries from pursuing "bad boy" policies with respect to the discretionary timing of the distribution of plan benefits to terminated employees. As one commentator has noted, such policies are a common feature of employer administered pension plans. Lee, *ERISA's "Bad Boy": Forfeiture for Cause in Retirement Plans*, 9 Loy.Chi.L.J. at 167–68. In the instant case, and in all likelihood in most cases, such a policy is not solely for the benefit of the Plan participants and, therefore, runs afoul of ERISA. Accordingly, such policies should be discouraged.

The parties have indicated their willingness, in the event the Court rules to award attorney's fees and costs, to meet and attempt to reach an agreement as to the proper amount of attorney's fees and costs. Defendants' Reply Brief, p. 11; Plaintiff's Response Brief, p. 9 n.1. *See Winer v. Edison Brothers Stores Pension Plan*, 447

F.Supp. 836, 838 (E.D.Mo.1978), *aff'd*, 595 F.2d 307 (8th Cir. 1979). The Court approves of such an approach. The parties are therefore ordered to consult on the amount of attorney's fees and costs to be awarded plaintiff and within 30 days either submit a consent order to this Court, or, in the event no agreement can be reached, each party submit a proposed order for the amount of an award of attorney's fees and costs.

### Conclusion

The Court hereby denies defendants' motion insofar as it seeks dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted. Defendants' motion for summary judgment is granted insofar as it seeks judgment in defendant Shorr's favor and is denied in all other respects. Plaintiff's motion for summary judgment is granted insofar as it seeks judgment against the Plan and Shorr Paper. Accordingly, those defendants are hereby ordered to pay to plaintiff in a lump sum pursuant to sections 5.4(c) and 6.1 of the Plan all of plaintiff's vested, nonforfeitable interest in the Plan. Plaintiff is awarded his reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) in an amount to be determined according to the tenor of the preceding discussion.