762 F.2d 1155
 6 Employee Benefits Ca 1859
 DISTRICT 2, UNITED MINE WORKERS OF AMERICA, George Zayac and
Janet Zayac
v.
The HELEN MINING COMPANY, Appellant,
and
Harrison Combs, John J. O'Connell and Paul R. Dean, as
Trustees of the United Mine Workers of America
Health and Retirement Funds.
 No. 84-3723.
 United States Court of Appeals,
Third Circuit.
 Argued May 17, 1985.
Decided May 31, 1985.
 
 Anthony J. Polito, Ronald S. Cusano (Argued), Corcoran, Hardesty, Ewart, Whyte & Polito, P.C., Pittsburgh, Pa., for appellant.
 Melvin P. Stein, Paul R. Yagelski (Argued), Kuhn, Engle & Stein, Pittsburgh, Pa., for appellees.
 Before HUNTER and SLOVITER, Circuit Judges, and MUIR, District Judge*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 Before us is the appeal by an employer who claims that the district court erred in holding that the action of the trustees of an ERISA-covered employee benefit plan in denying benefits to the spouse of an employee was arbitrary and capricious. We hold that the district court erred as a matter of law.
 
 I.
 Facts and Procedural History
 
 2
 Janet Zayac is the wife of George Zayac, a coal miner employed by the Helen Mining Company (employer) at a mine in Indiana County, Pennsylvania. In July, 1982, she underwent in-hospital surgical treatment for severe obesity, which consisted of a gastric bypass, gastrojejunostomy, jejunojejunostomy and Roux-en-Y procedure. Her physician had determined that surgery was medically necessary because she was 200% of her desirable weight and other more conservative methods of treatment had been tried and were unsuccessful. She was discharged from the hospital two weeks later.
 
 
 3
 Mr. Zayac submitted to the employer's plan administrator a claim for benefits in the amount of $17,612.30 for his wife's surgery. Benefits were denied because prior approval for the surgery had not been obtained from the benefits plan administrator, as required by the plan. It is undisputed that neither the Zayacs nor their physician had sought or obtained prior approval. There is also no dispute that the lack of such approval was the sole reason the claim was denied.
 
 
 4
 The collective bargaining agent, District 2 of the United Mine Workers of America (UMWA), filed a request for Resolution of Dispute on behalf of the Zayacs with the trustees of the benefit plan. The trustees upheld denial of benefits, and the Zayacs and the union brought this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, and Section 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1132, seeking to overturn the trustees' decision.
 
 
 5
 After discovery, the parties agreed that the issues could be resolved by summary judgment, and filed cross-motions. The district court then awarded judgment to the Zayacs and against the employer in the amount of $17,612.30, holding that the trustees' application of the prior approval requirement in the present case was arbitrary and capricious. The employer, Helen Mining Company, has appealed.[1]
 
 II.
 The Relevant Plan Provisions
 
 6
 The employer and the UMWA are signatories to the National Bituminous Coal Wage Agreement of 1981 (1981 Wage Agreement), a multi-employer collective bargaining agreement, the successor to a 1978 Wage Agreement. According to an unrebutted affidavit of a member of the Benefits Committee for the Bituminous Coal Operators' Association (BCOA), the 1978 Wage Agreement provided for the first time for the establishment and maintenance of employee benefit plans by the signatory operators rather than the trustees to provide health and other non-pension benefits to their employees. The affidavit also avers that "in establishing the employee benefit plans to be maintained and implemented by the signatory operators, BCOA and UMWA negotiators reviewed all of the interpretations that had previously been established and utilized by the Trustees and, in the course of explicit, informed and intense bargaining, adopted, revised or rejected those interpretations". What was finally agreed upon in negotiations was then inserted into the employee benefit plans to be maintained and implemented by the signatory operators.
 
 
 7
 Pursuant to the provisions of the applicable collective bargaining agreement, the employer maintained a benefit plan to provide health care benefits for employees and eligible dependents, including spouses. One of the health care benefits included within the plan was coverage of certain surgical treatments for morbid forms of severe obesity (two or more times desirable body weight). The plan sets out two prerequisites to obtaining benefits:
 
 
 8
 1. The beneficiary has a pathological, morbid form of severe obesity (200% or more of desirable weight);
 
 
 9
 2. Prior approval has been obtained from the Plan Administrator.
 
 
 10
 (emphasis added). The affidavit referred to above specifically states that the prior approval eligibility requirement was discussed and adopted as part of the benefit plan as a result of collective bargaining between the BCOA and UMWA during negotiation of the 1978 Wage Agreement. That eligibility requirement has been carried forward in employee benefit plans of signatory operators since 1978.
 
 
 11
 The trustees are given authority to make alterations in the benefit plan provisions, as they may deem to be necessary or appropriate, only "upon prior written approval by the Employers and the Union." They are also authorized and directed, after adequate notice and consultation with the employers and union, to make changes in the plans if necessary to conform the terms of the plan to the requirements of ERISA, or any other applicable federal law, and the regulations issued thereunder and to comply with all applicable court or government decisions or rulings.
 
 
 12
 In rejecting Mrs. Zayac's appeal of the plan administrator's denial of her claim for benefits, the trustees stated:
 
 
 13
 Question and Answer 81-20, attached hereto, lists three conditions that must be satisfied for benefits to be provided for surgical treatment of obesity: (1) the diagnosis signifies a pathological, morbid form of severe obesity, (2) other, more conservative therapies have been tried and proved unsuccessful, and (3) prior approval has been obtained from the Plan Administrator.
 
 
 14
 Although the Employee's spouse meets the first two requirements, she did not obtain prior approval from the Plan Administrator. Because prior approval of the Plan Administrator had not been obtained, as required, the Employer is not responsible for payment of charges incurred by the Employee.
 
 
 15
 The trustees had issued two "Question and Answer" interpretations on coverage for obesity treatment before Mrs. Zayac's surgery. In 1979, they issued Contract Question and Answer No. 38, as follows:
 
 Subject: Obesity
 Question:
 
 16
 1. a) Under Article III, Section A(3)(h) the benefits are limited to services "for treatment of illnesses or injuries, if provided by a physician". In this context, is the treatment of obesity, where no other pathology exists (e.g., hypertension, cardiovascular disease, diabetes), a covered benefit?
 
 
 17
 b) Under what conditions are benefits provided for the surgical treatment of obesity?
 
 Answer:
 
 18
 1. a) Yes, if the diagnosis signifies pathological, morbid form of severe obesity, i.e., 200% or more of the desirable weight. Beneficiaries eligible for obesity benefits at the onset of treatment are eligible for such benefits until they reach their desirable weight.
 
 
 19
 b) Benefits are not provided for surgical treatment of obesity unless all of the following conditions are met:
 
 
 20
 1) The beneficiary's condition meets the above definition of obesity;
 
 
 21
 2) other, more conservative therapies have been tried and proven unsuccessful; and
 
 
 22
 3) authorization has been obtained from the Plan Administrator.
 
 
 23
 In 1981, the trustees issued Question and Answer No. 81-20, which provided as follows:
 
 Subject: Surgical Treatment of Obesity
 
 24
 References: Amended 1950 & 1974 Benefit Plans & Trusts, Article III, Sections A(3)(f) and A(11)(a)25[2]
 
 Question:
 
 25
 What conditions must be satisfied for the Plan Administrator to approve gastric or intestinal bypass surgery for the treatment of obesity?
 
 Answer:
 
 26
 Benefits are only provided for these two surgical procedures when all of the following conditions are satisfied:
 
 
 27
 1. The Beneficiary has a pathological, morbid form of severe obesity (two or more times the desirable weight);
 
 
 28
 2. other, more conservative therapies have been tried and proved unsuccessful; and
 
 
 29
 3. prior approval has been obtained from the Plan Administrator.
 
 III.
 Decision of the District Court
 
 30
 In granting summary judgment for the plaintiffs, the district court stated that its review of the trustees' actions is limited to whether they were arbitrary and capricious. The court construed this as requiring "that it must consider whether there is a rational nexus between the purpose behind the prior approval requirement and the decision." The court noted that the trustees in an earlier decision had stated that the purpose of the prior authorization requirement is to insure that benefits are paid only for surgery that is medically necessary. Since, in this case, the trustees acknowledged that Mrs. Zayac's surgery was medically necessary, the court determined that the decision by the trustees denying Mrs. Zayac's claim "frustrates the purpose of the prior approval rule." It found no rational justification for the trustees' action, and found the trustees' decision to be arbitrary and capricious. It stated that "a claimant must still establish medical necessity in order to recover without gaining prior approval," and that "[t]he essence of this decision is that the trustees should not promote form over substance, especially when the form frustrates the purpose of the substance."
 
 IV.
 Discussion
 
 31
 The employer contends that the district court erred in reviewing the trustees' decision to deny benefits under the arbitrary and capricious standard. It contends that under United Mine Workers of America Health and Retirement Funds v. Robinson, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), the only inquiry a district court may make as to the trustees' application of an eligibility requirement in a plan that was derived as a result of explicit, informed, and intense collective bargaining is whether it violated federal law or policy. We need not decide whether a more limited review standard than arbitrary and capricious would be appropriate since we conclude that even under that standard the trustees' decision in this case must be upheld. We believe that result is compelled by the reasoning of the Supreme Court decision in Robinson.
 
 
 32
 In Robinson, widows of coal miners sued to set aside a collectively bargained benefits eligibility provision that gave increased health benefits to widows of pensioners but not to widows of pension-eligible miners. The plaintiffs contended that the provision was arbitrary and bore no rational relationship to the purpose of the trust fund. The Court of Appeals held the discrimination was arbitrary and failed to satisfy the requirement of Sec. 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. Sec. 186(c)(5), requiring that employee benefit trust funds be maintained for the sole and exclusive benefit of the employees and their dependents, because the trustees were unable to produce an acceptable explanation for the discrimination between pensioners. The Court of Appeals, although recognizing the legitimacy of concern about actuarial soundness, stated that it must be secured "on lines reasonably calculated to further the fund's purposes." Robinson v. United Mine Workers of America Health and Retirement Funds, 640 F.2d 416, 423-24 (D.C.Cir.1981).
 
 
 33
 The Supreme Court reversed. It held that Sec. 302(c)(5) does not impose a "general requirement that the complex schedule of the various employee benefits must withstand judicial review under an undefined standard of reasonableness." 455 U.S. at 574, 102 S.Ct. at 1233. The Court emphasized the limited role of the federal courts in such cases. It said:
 
 
 34
 As long as [eligibility] conditions do not violate federal law or policy, they are entitled to the same respect as any other provision in a collective-bargaining agreement.
 
 
 35
 Id. at 575, 102 S.Ct. at 1234. It continued,
 
 
 36
 [W]hen neither the collective-bargaining process nor its end product violates any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract.
 
 
 37
 Id. at 576, 102 S.Ct. at 1234.
 
 
 38
 Although the challenge in Robinson was to a benefit provision itself rather than to its application by trustees, it is clear that the Court's analysis is apposite to judicial review of action by trustees in administering provisions of the plan established pursuant to a collective-bargaining agreement. The Court stated, "Absent conflict with federal law, then, the trustees breached no fiduciary duties in administering the 1950 Benefit Trust in accordance with the terms established in the 1974 collective-bargaining agreement." 455 U.S. at 574, 102 S.Ct. at 1233.
 
 
 39
 Therefore, we reject appellees' attempt to distinguish Robinson from this case on the argument that Robinson only precludes review of collectively bargained eligibility requirements themselves under a reasonableness standard. We do not read it so narrowly. Instead, we believe that it follows from Robinson that when the trustees have consistently and literally followed an unambiguous benefit eligibility requirement that was bargained for and that was set forth in an employee benefit plan, that action cannot be called arbitrary and capricious by a court unless enforcement would violate federal law or policy.
 
 
 40
 Robinson was applied in this manner in Short v. United Mine Workers of America 1950 Pension Trust, 728 F.2d 528 (D.C.Cir.1984). Trustees of the UMWA 1950 Pension Trust denied a pension to a retired mine worker because he had not obtained the necessary years of credited service, a requirement imposed following his retirement as a result of the industry's collective bargaining agreement of 1978. The district court found for the plaintiff, after evaluating the reasonableness of the trustees' action in enforcing the eligibility requirements. The Court of Appeals reversed, stating:
 
 
 41
 Under Robinson ... absent conflict with federal law, we have no authority to invalidate the collectively bargaining [sic] eligibility requirements at issue in this case on the ground of unreasonableness, and we cannot invalidate as arbitrary, capricious, or a breach of fiduciary duty the actions of the Trustees in administering the 1950 Pension Trust in accordance with the terms established in the collective bargaining agreement.
 
 
 42
 Id. at 537.
 
 
 43
 In this case it is apparent that the district court undertook to examine the reasonableness of the prior approval requirement. Although its decision is couched in terms of the absence of "rational justification" for "the trustees' interpretation," the court was, in effect, striking a particular eligibility requirement as itself unreasonable, since the trustees were applying the express requirement for eligibility that was written into the plan. That was made explicit by the court's statement that, "a claimant must still establish medical necessity in order to recover without gaining prior approval." The district court viewed the requirement of prior approval unreasonable in a case where the surgery was admittedly medically necessary. While there is some logic to the district court's conclusion, after Robinson the inquiry into the reasonableness of such a provision is no longer permissible.
 
 
 44
 Moreover, this is not a case where the trustees have been so inconsistent in their prior interpretation of the provision that their action can be viewed as arbitrary and capricious. The evidence in the record establishes that at least three other such claims were denied for obesity treatment coverage under the benefit plan where there was lack of prior approval. Appellees presented no contrary evidence. The only decision pointed to by the appellees as inconsistent is distinguishable. In that instance, the participant had shown that the surgeon attempted to contact the plan administrator prior to surgery, and the participant had twice contacted the company and/or its insurance carrier to obtain prior approval. Under those circumstances, the trustees granted authorization for benefits. The trustees' statement that it is the practice of the funds to permit approval prior to payment of benefits or prior to the performance of surgery if the surgery is determined to be medically necessary must be understood in the context of the situation before them there. Since no attempt to obtain prior approval was made in this case, that statement does not assist these plaintiffs. We do not believe this record affords any basis for finding any inconsistency in the trustees' administration of the prior approval requirement.
 
 V.
 Conclusion
 
 45
 For the reasons set forth above we conclude that the district court erred in granting summary judgment for the plaintiffs. The courts are not free to modify the terms of collectively bargained benefit plans nor can the action of trustees taken in enforcing the unambiguous language of the prior approval requirement of such a benefits plan be termed arbitrary or capricious. Plaintiffs have conceded at oral argument that there remains no genuine issue of material fact. Indeed that was the basis for the cross motions for summary judgment. Therefore we will reverse the order of the district court granting summary judgment for the plaintiffs and direct that the district court grant the motion for summary judgment filed by the employer, Helen Mining Company.
 
 
 
 *
 Hon. Malcolm Muir, United States District Court for the Middle District of Pennsylvania, sitting by designation
 
 
 [1]
 The district court also dismissed the plaintiffs' claims against the trustees on the ground of judicial-type immunity. That issue has not been raised on appeal and hence we express no opinion on that holding
 
 
 [2]
 Both the 1950 and 1974 Benefit Plans and Trusts, as amended by the collective bargaining parties in 1978, were incorporated by reference into and made part of the 1981 Wage Agreement