**W. Thomas SHAW, Plaintiff,**

v.

**NVF COMPANY, a Delaware corporation, and Employees' Pension Plan of NVF Company, and Pension Committee of the Employees' Pension Plan of NVF Company, Defendants.**

**Civ. A. No. 87–606 MMS.**

United States District Court,
D. Delaware.

Aug. 10, 1988.

David H. Williams and Daniel P. McCollom of Morris, James, Hitchens, & Williams, Wilmington, Del., for plaintiff.

Jesse A. Finkelstein of Richards, Layton & Finger, Wilmington, Del. (Rosen & Reade, New York City, of counsel), for defendants.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

The parties have filed cross-motions for summary judgment seeking a decision on denial of an application for retirement benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1982). At the time of the denial, plaintiff, W. Thomas Shaw, was 53 years old and had slightly in excess of thirty years of employment with defendant NVF Company. Other defendants are the Employees' Pension Plan of NVF Company ("the Plan") and the Pension Committee of the Employees' Pension Plan of NVF Company ("the Pension Committee"). NVF and the Pension Committee will be collectively referred to as defendants.

## I. Background

When he applied for the pension benefits in question, Mr. Shaw was the Manufacturing Director of NVF's Phenolite plant and a member of NVF's Planning Committee, the top operating committee of management employees. On April 1, 1987 Shaw sent Russ Davis, Chief Operating Officer and Executive Vice President of NVF, a letter which reads in pertinent part as follows:

> On February 18, 1987, I completed thirty years of service with the NVF Co. The past five months, since my heart attack, I have given considerable thought to my future. I have decided that I would like to retire from the NVF Co. under the 70/80 Retirement Plan, beginning May 1, 1987.

Complaint, Exh. B. Paragraph (5), Section IV of the NVF Pension Plan provides as follows:

> (5) 70/80 Retirement
>
> Any participant (a) who shall have at least fifteen (15) Years of Service and shall have attained age fifty-five (55) or (b) who combined age and Years of Service shall equal 80 or more, and
>
> (i) whose job is eliminated, or
>
> (ii) who considers that it would be in his interest to retire and an Employer considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions, or
>
> (iii) who a Company or Employer retires at its option
>
> shall be eligible to retire on or after December 31, 1972 with a pension determined in accordance with Paragraph (3) of Section V.[1]

The parties concur on Shaw's satisfaction of the age and years service criteria. The litigants also agree plaintiff's right to 70/80 benefits turns upon construction of subsection ii of paragraph 5 because plaintiff's job was not eliminated (subsection i),

nor was plaintiff retired by NVF Company (subsection iii).

Following Shaw's request Davis communicated by telephone with P.A. Smalley, a member of the Pension Committee which administers the Pension Plan. Then on April 6, Davis advised Shaw that "you are not eligible under the 70/80 Revision [sic] of the NVF Retirement Plan." Complaint, Exh. C. In response to an April 29 letter from Shaw, *id.*, on June 9 Smalley wrote as follows:

> [Y]our situation clearly does not qualify you for consideration under the 70/80 Plan provisions.
>
> Succinctly, your position was *not* eliminated, nor was it a situation where a mutual agreement was reached regarding your leaving the Company. It is my understanding, in fact, that you voluntarily resigned your position with NVF Company to accept a position with another firm.
>
> You should be aware that we have reviewed your request with the members of our internal Benefit Committee and the conclusion is, as I have related, that your situation does not meet either the spirit or intent of the 70/80 provisions of the Plan in effect for salaried employees.

Complaint, Exh. E (emphasis in original). Thereafter, in an exchange of correspondence, plaintiff, through his attorney, requested and was denied a list of all participants who during the last ten years had requested retirement under the 70/80 plan and the disposition of each request. *Id.* Exhs. F and G. On August 21, plaintiff formally requested a hearing "to review the Plan Administrator's decision not to honor Mr. Shaw's claim for retirement under the ... 70/80 provision of the plan." *Id.* Exh. H. After a hearing on September 24, the Pension Committee denied the appeal on October 16.[2] The denial in pertinent part reads:

---

1. Paragraph 3 of Section V states that payments to an employee who is entitled to 70/80 Retirement "shall be equal to the pension credits accrued up to the date of retirement."

2. The NVF Pension Plan provides that the Pension Committee "... shall have the exclusive right to interpret the Plan and to determine any question arising hereunder or in connection with the administration hereof, and its decision or action in respect thereof shall be conclusive

On a close reading of Subsection (ii), it is clear that four separate elements must exist before the collective criteria of this provision can be satisfied. Initially, the participant must consider that it would be in his interest to retire. This is, of course, a subjective determination on the part of the participant, and, in his April 1, 1987 letter to Mr. Russ Davis, Mr. Shaw expressed an interest to retire, implying that health reasons were at least a factor in his decision. Mr. Shaw stated, "The past five months, since my heart attack, I have given considerable thought to my future. I have decided that I would like to retire from the NVF Co., under the 70/78 Retirement Plan, beginning May 1, 1987." Notwithstanding this statement, Mr. Shaw, effective April 30, 1987, voluntarily terminated his employment with NVF Company to continue his professional career with another employer. The second element requires that Mr. Shaw's employer consider that his retirement would likewise be in its interest. This too is a subjective determination and one that can only be made by NVF management which is in the best position to make a determination as to whether or not the retirement of any particular individual would be in the employer's interest. Clearly, NVF management did not consider that the loss of Mr. Shaw's services as a manufacturing director and member of policy-making and decision-making corporate committees would be in its interest. The third and fourth elements, respectively, require that a participant's application for retirement be approved and that such approval be reached under mutually satisfactory conditions. Needless to say, these elements were plainly lacking.

Mr. Shaw has suggested that the disposition of other 70/80 pension applications over the past ten years is a relevant consideration, and that the decision not to approve his pension application may have been inconsistent with the decisions reached in other cases under like circumstances. Because the nature, character and quality of services contributed by

and binding...." Complaint, Exh. A, Section

each employee are different, it necessarily follows that the intrinsic value of each employee to the company varies as well. Consequently, we do not believe it is possible to make objective comparisons in most cases. Each case, particularly with regard to whether or not the retirement of an employee would be in the employer's interest, must stand on its own individual facts and circumstances, and be considered and decided accordingly.

Dkt. 1, Exh. L.

On November 20, 1987, Shaw filed suit seeking monthly 70/80 retirement pension benefits of $1755.27 per month effective May 1, 1986, certain health benefits and group life insurance coverage available to other individuals who have retired from NVF, prorated vacation benefits and an award of costs and attorney's fees. The parties have filed cross-motions for summary judgment relying in toto upon a record consisting of the complaint, with exhibits, and four defense affidavits.

## II. Analysis

The United States Supreme Court has recently enunciated the standard for decisions on summary judgment.

> Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial.

*Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

If the non-movant has the burden of persuasion and the movant has identified facts sufficient to demonstrate that no issue of material fact remains, the non-moving party must identify for the court facts which would defeat the motion. *Childers v. Joseph,* 842 F.2d 689, 694–95 (3d Cir.1988). In order to defeat the motion, the non-moving party must produce evidence of facts material to the claim "such that a reasonable jury could return a verdict" in his

X, ¶ (4).

favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

At oral argument, counsel for plaintiff maintained no disputed issue of material fact remained while counsel for defendants argued that facts remained in dispute. Having reviewed the record applicable to this motion, the Court finds no disputed issues of material facts remain and the case is appropriate for resolution of the legal issues on summary judgment.[3]

Section IV, paragraph (5), Subsection (ii) of the Pension Plan sets forth four conditions:

1) the employee (Shaw) must consider it would be in his interest to retire;

2) the employer (NVF) must consider Shaw's retirement would be in its interest;

3) NVF must approve Shaw's application for retirement;

4) the approval for retirement must be under mutually satisfactory conditions.

The Pension Committee's October 16, 1987 denial of 70/80 benefits concedes condition 1 above was met, but denied benefits because Shaw failed to meet conditions 2, 3 and 4.

■ The standard for review in this ERISA action contesting denial of 70/80 benefits is whether the plan fiduciaries acted arbitrarily and capriciously. *Denton v. First Nat. Bank*, 765 F.2d 1295 (5th Cir. 1985); *District 2, United Mine Workers v. Helen Mining Co.*, 762 F.2d 1155 (3d Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985). In reviewing the plan fiduciaries' decision under the arbi-

trary and capricious standard, the trial court is limited to the evidence before the fiduciaries at the time of the final decision. *Denton*, 765 F.2d at 1304; *LeFebre v. Westinghouse Electric Corp.*, 747 F.2d 197, 204 (4th Cir.1984). A trial court may not consider post-hoc rationalization predicated upon evidence not before the plan fiduciaries at the time of their decision.[4]

■ Defendants argue their denial of 70/80 benefits was not arbitrary and capricious because NVF did not consider Shaw's retirement to be in its interest, withheld approval of Shaw's retirement application, and never agreed to mutual conditions for Shaw's retirement, all of which were preconditions to grant of 70/80 benefits under the 70/80 plan. Defendants' factual assertions are correct, but their legal conclusion ignores their status and duty under ERISA.

The ERISA statute provides that:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan....

29 U.S.C.A. § 1002(21)(A) (Supp.1988). The Pension Committee possessed "discretionary authority or discretionary control respecting management or disposition of assets" and "discretionary authority or dis-

---

**3.** *See infra* at note 4 for portions of the record which were not considered because they consisted of post hoc facts.

**4.** At oral argument counsel for defendants conceded the following post hoc facts were not before the plan fiduciaries at the time of their decision: ¶¶ 13, 14 and 15 of the Russell S. Davis Affidavit, Dkt. 14 (the costs of Shaw's receipt of a 70/80 pension is multiple of cost of a normal pension), and ¶ 16 of the same affidavit (Davis having been turned down for a 70/80 benefit); Affidavit of Graham A. Harrison, Dkt. 12 (actuarial calculations on relative costs of

70/80 benefit to Shaw and that of Shaw's normal retirement benefit); ¶¶ 6 and 7 of the second Affidavit of Philip A. Smalley, Jr., Dkt. 17 (prevalence of 70/80 retirement benefits in the entire steel industry and the effect of a favorable decision for Shaw on the steel industry). Accordingly, the record which the Court may consider for summary judgment purposes consists of plaintiff's complaint and its exhibits, the first Smalley Affidavit, Dkt. 13, ¶¶ 1–12 of the Davis Affidavit, Dkt. 14, and ¶¶ 1–5 of the second Smalley Affidavit, Dkt. 17.

cretionary responsibility in the administration of the plan." In addition, under Paragraph 5(ii) NVF had the power to withhold consent to a claim for 70/80 benefits, and through its consent power, NVF controlled "disposition of assets" as used in 29 U.S.C. § 1002(21)(A) (1982). Both the Pension Committee and NVF are fiduciaries with respect to a plan under ERISA.

The duty of a fiduciary under ERISA is straightforward:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; ...

29 U.S.C. § 1104(a)(1)(A)(i). Defendants did not discharge their fiduciary duties in accordance with ERISA requirements. *See Frary v. Shorr Paper Products, Inc.*, 494 F.Supp. 565, 569 (N.D.Ill.1980) (violation of ERISA fiduciary duty to deny benefits to employee going to competitor based only upon employer's desire to protect employment contracts and to punish these employees). Indeed, the fiduciaries' decision to deny benefits was governed solely by what was in the best interest of NVF:

The second element [of subsection (ii)] requires that Mr. Shaw's employer consider that his retirement would likewise be in its interest. This too is a subjective determination and one that can only be made by NVF management which is in the best position to make a determination as to whether or not the retirement of any particular individual would be in the employer's interest. Clearly, NVF management did not consider that the loss of Mr. Shaw's services as a manufacturing director and member of policy-making and decision-making corporate committees would be in its interest.

Dkt. 1, Exh. L.

Defendants do not seriously contest their failure to discharge section 1104(a)(1)(A)(i) fiduciary responsibilities in denying 70/80 benefits to Shaw. Rather, they assert section 1104(a)(1)(A)(i) is inapplicable to them because it does not pertain to pension eligi-

bility determinations and they were not acting as plan administrators when they denied benefits. Defendants also advance a line of decisions upholding employer consent as a condition precedent to grant of pension benefits. These arguments will be addressed seriatim.

■ Defendants strenuously argue their denial of 70/80 benefit decision was not arbitrary or capricious, because they simply applied and were in strict compliance with the Plan's conditions in denying benefits. Relying on *Hickman v. Tosco Corp.*, 840 F.2d 564 (8th Cir.1988), *District 2*, 762 F.2d 1155, and *Lefebre*, 747 F.2d 197, they assert section 1104(a)(1)(A)(i) is inapplicable with respect to a fiduciary's decision on eligibility for a benefit and is only applicable with respect to the form or timing of the distribution of a vested benefit. *See also Morse v. Stanley*, 732 F.2d 1139 (2d Cir.1984); *Frary*, 494 F.Supp. 565. The difficulty with defendants' position is that none of the cited cases articulate the distinction being urged by defendant. Moreover, the denial of pension eligibility in *Hickman* and *LeFebre* were governed by section 1104(a)(1)(A)(ii), but nonetheless passed muster. In addition, eligibility denial under the pension plan in *District 2* was predicted in part upon an explicit, informed and intense collective bargaining agreement. *See* 762 F.2d at 1160. In the instant case, the 70/80 plan was not the product of collective bargaining, but voluntarily implemented by NVF. Finally, unlike the plan in *District 2* which had explicit objective eligibility criteria, *see id.*, the 70/80 plan sets forth no standards governing withholding of consent. In the words of the Pension Committee, the determination by NVF as to whether Shaw's retirement would be in its interest is a "subjective determination" which can only be made by NVF management. Dkt. 1, Complaint, Exh. L.

■ Defendants next argue that when NVF made the decision to withhold consent to Shaw's application, and the Pension Committee deferred to NVF's judgment, they were not acting as Plan administrators, but as an employers. It is true "the

ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets." *Hickman v. Tosco Corporation,* 840 F.2d at 566. *Accord Sutton v. Weirton Steel Division of National Steel Corp.,* 567 F.Supp. 1184, 1200–01 (N.D.W. Va.), *aff'd,* 724 F.2d 406 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). *See also Amato v. Western Union International, Inc.,* 773 F.2d 1402 (2d Cir.1985), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986).

In *Hickman,* the pension plan explicitly provided that participants with thirty years of service who were terminated before age fifty-five were entitled only to reduced early retirement benefits. 840 F.2d at 565. The employer terminated employees age fifty-four following sale of a plant. *Id.* The employees, confronted with an explicit, objective plan criteria, requested their employment be "bridged" until they reached age fifty-five. *Id.* In upholding a denial of full benefits, the appellate court found the decision to terminate employees rather than carry them on the payroll was an employment decision that did not directly affect the administration of the pension plan. *Id.* at 567. Similarly, in *Sutton,* the Fourth Circuit appellate court held an employer did not violate ERISA in its capacity as a fiduciary where, in the context of a proposed buy-out of the employer's steel mill, it renegotiated collective bargaining agreement provisions relating to unfunded, contingent early retirement benefits. 567 F.Supp. at 1200–01.

■ In both *Hickman* and *Sutton,* the respective appellate courts found the sale or proposed buy-out of plants had an incidental effect on pension eligibility. However, in denying Shaw 70/80 benefits, defendants were making a Plan administrator's decision, unrelated to the corporation's business transactions. Therefore, in deciding to deny benefits, defendants acted in their Plan administrator capacity.

■ Finally, defendants assert their denial of benefits is not arbitrary and capricious under case law upholding condition precedents to the grant of pension benefits. None of the relied upon cases supports defendants' denial of benefits to Mr. Shaw. In *Denton,* the plaintiff, like Shaw, left to go to work for a competitor and requested a lump sum retirement benefit. 765 F.2d at 1297. However, acting on the advice of its actuaries, the committee declined the request because "it might impair the Plan's ability to meet the future retirement obligations of other Bank employees." *Id.* at 1298. *See also Fine v. Semet,* 699 F.2d 1091, 1094 (11th Cir.1983) (no violation of ERISA fiduciary duty in discretionary denial of lump sum retirement benefit the payment of which would be fiscally imprudent). In contrast, defendants did not rely on actuarial advice in denying benefits to Shaw.

The pension committee in *Morse* denied accelerated pension payments to an employee going to work for a competitor. 732 F.2d at 1144. However, the court stressed the facts that the pension was a profit sharing plan, and the employer had a policy of making payments to departing employees whose accounts had less than $10,000 or to recipients who did not leave to join a competitor. *Id.* The court stressed the importance of the plan being a profit-sharing plan as follows:

Since the Plan is a profit sharing plan funded ... entirely by employer contributions, the amount of funding depends upon the amount of profits generated by the business. One of the important components of profitability, of course, is the productivity of the employees in the business. Where an employee leaves a company to accept a position *outside* the industry, that company's profits are affected by the costs it must incur to groom a replacement; but if that same employee accepts a position within the *same* industry and with a direct competitor, not only must the first company bear the costs of grooming a replacement, but it suffers additional detriment from the

competitor's use of that employee's talents and contacts.

*Id.* at 1146 (emphasis in original). Unlike *Morse,* the 70/80 is a defined benefits plan funded by contributions by NVF and not dependent on NVF profits. In addition, unlike the consistent application of a policy on payments to departing employees, defendants had no policy and specifically refused to consider past grants of benefits to other participants. Dkt. 1, Complaint, Exh. L.

In *LeFebre v. Westinghouse Elec. Corp.,* the trustees denied disability benefits because of substantial evidence demonstrating the applicant was not disabled. 747 F.2d at 208. The court in *Johnson v. Botica,* 537 F.2d 930, 937 (7th Cir.1976), a non-ERISA case, upheld a denial of disability benefits because to do otherwise would require the trustee to substitute a new provision in the pension plan for an existing one. Finally, *Hackett v. Pension Benefit Guaranty Corporation,* 486 F.Supp. 1357 (D.Md.1980), is of no precedential value because it depended upon the terms of a pension guaranty agreement.

The Court declines to follow the decision in *Hlinka v. Bethlehem Steel Corp.,* No. 87–0005 (E.D.Pa. March 31, 1988) (WESTLAW, ALLFEDS, 1988 WL 33914 (E.D. Pa.)), *appeal docketed,* No. 88–1347 (3d Cir. April 28, 1988). In *Hlinka* the court considered a pension plan provision nearly identical to paragraph 5(ii) in the NVF plan.[5] Because the court in *Hlinka* found that the early retirement benefits under the 70/80 plan were not accrued benefits and were therefore forfeitable, the court held the plan not to be in violation of ERISA and granted defendants' motion for

summary judgment. The *Hlinka* court relied upon the decisions in *Sutton, Fine* and *Morse,* which this Court has found distinguishable from the issue before it. In addition, the cited Third Circuit appellate court decision in *Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund,* 763 F.2d 574 (3d Cir.1985), as well as *Sutton,* concerned the ability of an employer to terminate an early retirement plan under ERISA.[6] The issue before this Court is not whether NVF could terminate the 70/80 plan, but whether the 70/80 plan is administered in accordance with ERISA requirements. Defendants have conceded that the NVF pension plan is controlled by ERISA provisions. *See* Dkt. 1, Complaint at ¶ 8; Dkt. 6, Answer at ¶ 1. As fiduciaries of a plan subject to ERISA, NVF and the Pension Committee must comply with section 1104(a)(1)(A)(ii). I respectively decline to follow *Hlinka* to the extent it holds otherwise.

In summary, but for *Hlinka* the cases cited by defendants all resulted in a denial of benefits, each denial was in the "interest of the participants and beneficiaries" within the meaning of section 1104, or was predicated upon explicit, objective criteria contained within the pension plan. In denying 70/80 benefits to Shaw, defendants articulated no justification demonstrating the denial to be in the interest of the participants and beneficiaries. Rather, they were motivated solely by NVF's subjective determination of its own self-interest. As a consequence, summary judgment will be granted to plaintiff.

I recognize the above holding bestows a tacit judicial endorsement to a Plan provision which encourages valued employees to

**5.** The relevant portions of the plan in *Hlinka* read:

Any participant who has not attained the age of 62 years and who shall have had at least 15 years of continuous service and (i) shall have attained the age of 55 years and whose combined age and years of service shall equal 70 or more, or (ii) whose combined age and years of continuous service shall equal 80 or more, and

. . . . .

(d) who considers that it would be in his Employing Company's interest to retire, and

his Employing Company considers that such retirement would likewise be in its interest and approves an application for retirement under mutually satisfactory conditions, shall be eligible to retire ..., and shall upon his retirement ... be eligible for a pension.... *Hlinka,* slip op. at n. 3.

**6.** As noted by the appellate court, this issue was mooted by the passage of 29 U.S.C. § 1054(g) in 1984 extending limitations on plan amendments to early retirement benefits. *Bencivenga,* 763 F.2d 577 n. 3.

take retirement if otherwise eligible. However, the endorsement results from the wording of the Plan provision (amended out of the Plan as of January 1, 1988) and the failure of the fiduciaries to frame their decision in a manner which would have demonstrated they were discharging their duties solely in the interest of the participants and beneficiaries of the NVF pension plan.

 Plaintiff has applied for attorney's fees and costs. The ERISA statute provides that "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In exercising its discretion, the Court should consider the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980).

While acknowledging defendants' arrogance (*see* Dkt. 1, Complaint, Exh. K) is indicative of some culpability, the precise degree is difficult to assess given the 70/80 Plan provisions. It may be assumed NVF has the ability to satisfy an award of attorney's fees and costs, but there is a serious question as to whether imposition of attorney's fees would deter other employers under similar circumstances, if indeed other employers have retained the offending provision in their pension plans. In the instant matter, it cannot be said Shaw sought to benefit all participants and beneficiaries of the NVF ERISA plan. He intended to benefit himself. In like vein, this case does not resolve a significant legal question re-garding ERISA itself. To the extent there was a significant legal question, *Frary v. Shorr Paper Products, Inc.,* 494 F.Supp. 565 (N.D.Ill.1980), must be considered as blazing the initial trail. Finally, while plaintiff's position has been vindicated, it cannot be said defendants' position was totally berift of plausibility. On balance, I conclude attorney's fees and costs should not be awarded to plaintiff.

An order shall be presented on notice within 10 days.